BOSTON, BARRE AND GARDNER RAILROAD COMPANY *vs.*
TIMOTHY W. WELLINGTON.

A railroad corporation, authorized by its charter to commence the construction of its road
whenever a given number of shares has been subscribed for, can assess *the* shares
when the subscriptions have reached that number, although the whole number of shares
has not been determined.

One who has subscribed to the capital stock of a railway company, which is authorized to
assess its stock when a given number of shares has been subscribed for, cannot object
that, after his own liability to assessment has become fixed by the required number of
shares being taken, the corporation has made a contract by which the builder of the road
is to receive a portion of his pay in stock, the contractor having subscribed for that
amount of stock, and the contract having been made in good faith by the parties and
honestly performed by the contractor.

A railroad corporation, having filed a location in which the road was divided into three
divisions, and in which a portion extending to a point in the town of P. was designated
as the first division, was subsequently empowered by statute to build its road in sections,
and the road was so built; afterwards a new location was filed, in which the road was not
divided into sections, and no point in the town of P. was indicated as the end of the first
section.  In an action by the corporation to recover assessments against one who, before
the relocation, had subscribed for stock in the first section, *Held,* that the failure to fix
the end of the first section in the relocation did not discharge the stockholder from lia-
bility to assessment.

A corporation may maintain an action upon an express promise to pay assessments on stock,
although by a subsequent provision of the subscription paper it is authorized to sell the
stock in case of non-payment.

CONTRACT to recover five assessments, each of twenty per
cent., on fifty shares of the plaintiff's capital stock subscribed for
by the defendant.

In the Superior Court the case was submitted upon the follow-
ing agreed statement of facts :

The plaintiff was incorporated as the Barre and Worcester
Railroad Company, by St. 1847, *c.* 276, and received its present
name by St. 1849, *c.* 55.   At the first meeting of the corpora-
tion, held May 19, 1847, by-laws were adopted, the ninth article
of which was as follows: " The capital stock of the corporation
shall consist of seven thousand shares of one hundred dollars
each, and the number thereof may be increased from time to time
as the directors may determine, so that they do not exceed ten
thousand shares."   At a meeting of the stockholders, held
August 3, 1851, this article was amended by striking out the
word *seven* and inserting the word *six.*

The corporation, December 30, 1848, filed a location, in which that portion of the road extending from Worcester to a point in Princeton, indicated on the location, was designated as the first division; that portion extending from the point in Princeton to Gardner was designated as the second division; and that portion of the road extending from Princeton to Barre was called the third division.

July 19, 1869, the defendant signed the following instrument:

" Whereas, by an act of the Legislature of the Commonwealth of Massachusetts, passed April 26, 1847, the Barre and Worcester Railroad Company was incorporated; and whereas, by another act, passed March 24, 1849, the name was changed to the Boston, Barre and Gardner Railroad Corporation; and by another act, passed on the 12th day of May, 1853, the said corporation, among other things, was authorized to construct its railroad in three sections: the first section to extend from the Worcester and Nashua Railroad, in Worcester, through West Boylston and Holden, to some convenient point in Princeton, ' the second section to extend from the northerly end of the first section in the town of Princeton, through the town of Hubbardston, to some convenient point on the Vermont and Massachusetts Railroad, in the town of Gardner; the third section to extend from some convenient point on the first section, through the towns of Rutland, Hubbardston and Oakham, to some convenient point in the town of Barre, all in the county of Worcester; ' and the said corporation was, by the same act, authorized on cer tain conditions to construct one or all of said three sections of railroad; and by subsequent acts the time for the construction of the said railroad has been extended from time to time, and by an act passed February 21, 1868, said time was extended to the first day of July, 1871;

" Now therefore, be it known that we, whose names are hereto subscribed, being convinced that the construction of said railroad would be greatly conducive to the prosperity of the community, in consideration of the premises, and of the benefits and advantages resulting to us respectively, have and do hereby become subscribers to the capital stock of said railroad corporation, and

we do hereby promise said corporation, and do faithfully under-take, each of us respectively, to pay to said corporation, in such instalments as the president and directors of said corporation, under the provisions of law, may require, one hundred dollars for each share set against our respective names, and to comply in all respects with the provisions of law regulating the subscrip-tion to the capital stock of railroad companies ; and we severally promise and agree to and with said corporation that when the said president and directors shall have legally assessed and de-clared payable one or more assessments amounting in the aggre-gate to twenty per cent. upon each share subscribed for by us respectively, we will pay the ' same to said corporation within twenty days of the time when the same shall thus be declared payable, and in case of neglect or failure so to do, we each of us respectively authorize and empower the directors aforesaid to make sale of the shares subscribed for by each of us respectively, in such a manner as they shall deem expedient, according to law ; and we do hereby acknowledge ourselves to be firmly bound and indebted to said corporation for any deficiency arising from the sale of said shares for a less sum than one hundred dollars for each share, provided that the amount of our subscription shall be applied to the construction of the section or sections of said rail-road set against our respective names."

September 30, 1869, the president and directors of the com-pany voted an assessment of twenty dollars a share on the stock then subscribed for on the first and second sections of the road, payable on or before the 25th of the next October.  September 6, 1870, they voted a second assessment of twenty dollars a share on all the shares subscribed for on both sections, payable within thirty days from the 10th of the same month.  January 21, 1871, they voted a third assessment of twenty dollars a share on all the shares subscribed for on both sections, payable on or before the 10th of the next March.  April 4, 1871, they voted a fourth assessment of twenty dollars a share on all the shares subscribed for on both sections, payable on or before the 10th of the next May.  June 6, 1871, they voted a fifth assessment of twenty dollars a share on all the shares subscribed for on both sections,

payable on or before the 10th of the next July. January 4 1870, they voted "that the number of shares for the present be fixed at eight thousand." The defendant had notice of and was requested to pay all of the assessments.

November 10, 1869, the corporation entered into a written contract for the construction of its railroad from Worcester to Gardner with R. P. Cooke & Co., by which Cooke & Co. agreed to "execute, construct and finish in every respect in a substantial and workmanlike manner, and to the satisfaction and acceptance of the chief engineer of said railroad corporation, the first and second sections of the said Boston, Barre and Gardner Railroad, extending from its junction with the Worcester and Nashua Railroad, near the city of Worcester, through the towns of Holden, Princeton, Hubbardston and Gardner, to its junction with the Vermont and Massachusetts Railroad at the Gardner station;" and "that the said railroad should be completed as described in " the specifications set forth in the contract, "on or before the first day of July in the year 1871." And in said contract the railroad company agreed that they would, "for the full doing and performing of the aforesaid work, pay or cause to be paid to the said R. P. Cooke & Co., at the rate of $24,600 for each mile contracted for between the termini of said railroad;" and it was further stipulated in the contract that ten per cent. of the total amount of said payments was to be in the capital stock of said corporation, at its par value of one hundred dollars per share." At the same time R. P. Cooke & Co. subscribed for a number cf shares equal to the ten per cent. to be paid them in stock divided between the first and second sections.

The road was built under this contract, from Worcester to Gardner, and was completed and commenced running as soon as September 4, 1871. Cooke & Co. were paid as provided for in the contract.

June 30, 1871, the corporation filed a relocation of its road from Worcester to Gardner, under St. 1870, *c.* 69, upon which location the road was built. In this location there was no division of the road into sections, nor was there any point indicated upon it in Princeton as the end of the first section or the begin-

ning of the second section, but the relocation passed over and included the point indicated in the first location as the line between the first and the second division. There was never any division of the road into sections, nor any point in Princeton fixed upon as the termination of the first section and the commencement of the second and third sections, except as here stated ; but more money was expended on the construction of the road between the Worcester terminus and the point of division in Princeton, than was subscribed for the first section, including the plaintiff's subscription; the balance being obtained by loans and by general subscriptions.

The third section has never been built or located, and no stock has ever been subscribed for it.

At the date of this first assessment, more than two thousand shares had been subscribed for the first and second sections ; but less than eight thousand shares in all have ever been subscribed for.

At the date of the first assessment no part of the stock had been paid in, and no work had been done on the road.

Upon these facts judgment was to be entered for the plaintiff for the whole or any part of said assessments, or for the defendant, as the court should determine.

The court entered judgment for the defendant, and the plaintiff appealed.

*W. W. Rice*, for the plaintiff.

*G. F. Hoar & T. L. Nelson*, for the defendant. The plaintiff's charter, St. 1847, c. 276, § 3, provides that the capital stock of the company shall not exceed ten thousand shares, the number of which shall be determined from time to time by the directors. The by-laws made by the stockholders, May 19, 1847, fixing the number of the shares at seven thousand, and the by-laws made by the same body, August 3, 1851, reducing the number to six thousand, were void. The number of shares was never lawfully determined until the vote of the directors passed January 4, 1870, by which the number was fixed at eight thousand. Angell & Ames on Corp. § 343. The whole number of shares fixed by the directors having never been subscribed for, the directors had

no authority to make the assessments. *Salem Mill Dam Co.* v. *Ropes*, 6 Pick. 23 ; *S. C.* 9 Pick. 187. *Cabot & West Spring-field Bridge* v. *Chapin*, 6 Cush. 50. *Worcester & Nashua Rail-road Co.* v. *Hinds*, 8 Cush. 110. *Atlantic Cotton Mills* v. *Abbott*, 9 Cush. 423. *Lexington & West Cambridge Railroad Co.* v. *Chandler*, 13 Met. 311. *Troy & Greenfield Railroad Co.* v. *Newton*, 8 Gray, 596. *Penobscot & Kennebec Railroad Co.* v. *Bartlett*, 12 Gray, 244. Sts. 1851, *c.* 63, § 4; 1870, *c.* 69, § 1.

The road was never divided into sections, as contemplated by the subscription paper. The original divisions upon the location fixed in 1848 were never adopted by the directors or the company, after the act of 1853. *Agricultural Branch Railroad Co.* v. *Winchester*, 13 Allen, 29. If the right to build one section by itself required the corporation to raise a separate capital stock for that section only, it has failed to divide its road into sections. If the capital subscribed in performance of this condition was general capital, it had no right to make assessments on the " shares subscribed on both sections " alone, not including those subscribed as part of the general stock of the road.

The subscription to the stock of the road made by the contractor was not a lawful contract under Gen. Sts. *c.* 63, §§ 7, 8. The law requires an actual cash payment. The twenty per cent. is to be " actually paid into its treasury." Section 8 prohibits the issue of stock for less than the par value, " to be actually paid in on each share." The contractor pays for his stock in road build-ing or in the profits of road building. The substance of the transaction is not affected by the form of a subscription or assess-ment. The assessments on the defendant's stock are not equal assessments within the meaning of Gen. Sts. *c.* 63, § 9.

By the terms of the subscription paper, no action can be main-tained for the assessments unless the shares are first sold by the directors and a less sum than the amount assessed is realized from the sale. *Lexington & West Cambridge Railroad Co.* v. *Chand-ier*, 13 Met. 311.

MORTON, J. The original charter authorized the plaintiff to build a road from Worcester through Princeton to Barre, and also a road from Princeton to Gardner. It provided that the

capital stock should not exceed ten thousand shares, the number to be determined from time to time by the directors, and that no assessment should be laid thereon greater in the whole than $100 on each share. St. 1847, c. 276. By the act of 1853, c. 336, § 2, it is provided that the corporation may " construct their road by sections ; " the first section to extend from Worcester to Princeton ; the second from Princeton to Gardner, and the third from Princeton to Barre ; and that "after it has commenced the construction of the first section," it " may construct either or both of the second and third sections, or so much of the third section as it may think proper, subject to the provisions hereinafter contained as to capital stock." The fifth section provides that the corporation may commence the construction of the first section whenever two thousand shares of the capital named in the act of incorporation shall have been subscribed for by responsible parties, and twenty per cent. on such shares paid in and a certificate thereof filed with the secretary of the Commonwealth ; and that it may " also commence the construction of either the second or third sections of its railroad, whenever two thousand shares of said stock (additional) shall have been subscribed for such section, and twenty per cent. paid thereon and a certificate thereof filed as hereinbefore provided." No further change was made in the plaintiff's charter before the defendant subscribed, except that from time to time laws were passed extending the time allowed for constructing the road.

1. The defendant contends that he is not liable under his subscription until the directors have fixed the number of shares and such shares have been subscribed for ; and relies upon *Salem Mill Dam Corporation* v. *Ropes*, 6 Pick. 23, and the later cases to the same effect cited by him. But the provisions of the charter above cited take this case out of the principle of those cases.

The provision, that the corporation may commence the construction of the first section when two thousand shares are subscribed, by implication gives the corporation the right to assess the shares when they reach the number thus fixed. The defendant subscribed with reference to this provision and assented to it. His promise to pay assessments, therefore, was upon the condi-

tion that he would pay when two thousand shares were subscribed according to the charter and the terms of the subscription paper. If this condition has been fulfilled he is liable on his contract, and the question whether the number of shares was legally fixed, before the assessments were laid is immaterial for the purposes of this case. This point was substantially decided in *Lexington & West Cambridge Railroad Co.* v. *Chandler*, 13 Met. 311. See also *Penobscot & Kennebec Railroad Co.* v. *Bartlett*, 12 Gray, 244. It appears by the agreed facts that, before the first assessment was laid, more than two thousand shares had been subscribed for each of the first and second sections, and it follows that the corporation had a right to lay and collect assessments, upon the stock subscribed for by the defendant.

2. The defendant contends that he is released from his liability to pay the assessments upon his stock by the contract made by the corporation with Cooke & Co. By this contract Cooke & Co. agreed to build the first and second sections of the road, it being stipulated that ten per cent. of the amount to be paid them should be paid in the capital stock of the corporation at its par value.

At the time of executing the contract Cooke & Co. subscribed for a number of shares equal to said ten per cent., divided between the first and second sections. This contract was made after the first assessment had been laid, and after two thousand shares had been subscribed for each of the first and second sections, and therefore after the liability of the defendant according to the conditions of his promise, had become fixed. The stock subscribed for by Cooke & Co. was not needed to make up the number of two thousand shares required to be taken before assessments could be made. The case thus differs from *Troy & Greenfield Railroad Co.* v. *Newton*, 8 Gray, 596, as also in the fact that the subscription of Cooke & Co. appears to have been an absolute subscription for the stock at par. The contract with Cooke & Co. was made in good faith and was fully performed by them; there is nothing to show that all the assessments were not duly made on the stock subscribed for by them; if such assessments were paid by offsetting a debt due by the company for building the

road, it was to all purposes equivalent to a cash payment. It did not vitiate any condition upon which the defendant agreed to take his stock, in no way injured him, and would not invalidate his previous subscription.

3. The objection that the road was not divided into sections, as contemplated by the subscription paper, cannot be sustained. The corporation in its original location filed in 1848 divided the road into " divisions," and in the contract with Cooke & Co. and the other acts of the corporation, these divisions were recognized and acted upon as the sections by which the road was to be built under the act of 1853. The road was in fact built by these divisions. The fact that in the relocation filed in 1871, after all the assessments sued for had been made, the corporation neglected to indicate any point in Princeton as the end of the first section, was at most a formal irregularity, which could not defeat the liability of the defendant to pay his assessments according to his promise. It violated no condition upon which the promise was made.

4. The defendant further contends that by the terms of the subscription paper no action can be maintained for the assessments unless the shares are first sold by the directors and a less sum than the amount assessed is realized from the sale. But such are not the terms of the subscription paper. It contains an express promise to pay all the assessments to the amount of one hundred dollars per share. The additional clause authorizing the directors to sell the stock in case of neglect to pay assessments, and promising to pay the deficiency if the stock sells for less than one hundred dollars per share, does not affect the first express promise, but gives the directors the alternative to sue upon the promise or proceed under the statute and sell the stock and recover of the subscribers the deficiency. *City Hotel* v. *Dickinson*, 6 Gray, 586. The result of the whole case is that the plaintiffs are entitled to recover all of the assessments.

*Judgment for the plaintiffs.*