## ARKADELPHIA COTTON MILLS *v.* TRIMBLE.

Decided March 14, 1891.

*Corporation—Stock—Subscription.*

> Where the articles of association of a corporation provide that the capital stock shall be fifty thousand dollars, of which fourteen thousand and five hundred dollars have been subscribed, and that the residue may be issued and disposed of as the board of directors may from time to time direct, and where the company had begun business before defendant subscribed, there is no implied condition that his subscription shall not be paid until the whole capital stock is subscribed.

APPEAL from *Miller* Circuit Court.

C. E. MITCHEL, Judge.

*Arnold & Cook* for appellant.

It is true the general rule is that it is an implied contract that the subscription is binding only after the full capital stock has been subscribed. 6 Pick., 23; Cook on Liability of Stockholders, sec. 176; Morawetz on Pr. Corp., sec. 137. But the statute does not require the whole capital stock to

be subscribed, and where a charter by its terms shows an intention to begin business after a certain sum is subscribed, then the subscription is binding.    113 Mass., 79; 13 Met. (Mass)., 311; 12 Gray, 244; 34 Me., 360; 40 Me., 44; 2 Met. (Ky.), 219; 11 Kans., 412; 11 N. Y., 102; 18 Ind., 452; 65 Me., 636; 68 Mass., 277; 128 Mass., 445.    This was an unconditional subscription.    Mor. Pr. Corp., sec. 149; 31 Ohio, 23; Mor. Pr. Corp., sec. 410.

*Scott & Jones* for appellee.

Appellee was not liable upon his subscription until the whole of the capital stock was subscribed.    5 Am. and Eng. Corp. Cases, 40.    This is the rule, *unless there is a clear provision in the contract* to the contrary.    46 Tex., 633; 7 S. W. Rep., 480; 10 Am. and Eng. Corp. Cases, 72; 12 *id.*, 85; 37 Fed. Rep., 508; 1 N. E. Rep., 268; 37 Pa. St., 210; 7 Atl. Rep., 482; Cook on Stock, etc., sec. 176.

2.    Under our laws it is a jurisdictional condition precedent to parties becoming an incorporation to transact business, that the fixed amount of capital must have been subscribed.    Mansf. Dig., secs. 961–8; 1 Mor. Pr. Corp., sec. 29.

BATTLE, J.    The Arkadelphia Cotton Mills is a corporation organized and existing under the laws of this State. Sometime in January, 1888, M. H. Trimble subscribed the articles of association of the corporation, and an agreement to take and pay for twenty shares of its capital stock, amounting in the aggregate to $500.    Afterwards four assessments of 25 per cent. each on all the shares taken in the capital stock were made by the board of directors.    Trimble was duly notified of the assessments upon his share, but refused to pay them because the full amount of the capital stock, as fixed by the articles of association, had not been taken.    The question is, was he subject to the assessment?

As a general rule every contract to take and pay for shares in the capital stock of a corporation is based on the implied condition that no part of it is to be performed until the corporation is authorized to begin the prosecution of its en-

*Subscription to corpora stock.*

·terprise. The reason of the rule is that "until that time the company can have no use for its capital, nor can there be any assurance that it will ever be required." It is also ·based on another condition, and that is, no assessments upon the shares taken shall be made until the whole amount ·of the capital stock has been subscribed. This condition, in the absence of a contrary agreement, arises by implication from the just and reasonable understanding of the subscriber that he is to be aided by other subscriptions, which, with the amount subscribed by himself, will be equal to the amount fixed as the capital stock of the company. *Stone-ham Branch R. Co.* v. *Gould*, 2 Gray, 278; *Galveston Hotel Co.* v. *Bolton*, 46 Texas, 633; 1 Morawetz on Private Corporations, sec. 137, and cases cited.

In *Stoneham Branch R. Co.* v. *Gould*, Chief Justice Shaw said: "It is a rule of law too well settled to be now questioned, that when the capital stock and the number of shares are fixed by the act of incorporation, or by any vote or by-law passed conformably to the act of in-·corporation, no assessment can be lawfully made on the · share of any subscriber, until the whole number of shares has been taken. This is no arbitrary rule; it is founded on a plain dictate of justice, and the strict principles regulating the obligation of contracts. When a man subscribes a share to a stock, to consist of one thousand shares, in order to carry on some designated enterprise, he binds him-·self to pay a thousandth part of the cost of such enterprise. If only five hundred are subscribed for, and he can have no .assurance which he is bound to accept that the remainder will be taken, he would be held, if liable to assessment, to pay a five-hundredth part of the cost of the enterprise, besides incurring the risk of the entire failure of the enterprise itself, and the loss of the amount advanced towards it."

This rule is further explained in *Galveston Hotel Co.* v. *Bolton*, 46 Texas, 633, as follows : "When there is no pro-·vision to the contrary, the man who takes the first share of .stock takes it on condition that all of the shares will be

taken, until the amount fixed as the capital stock of the company shall be taken by persons who will be equally bound with himself to bear the expense of the enterprise, share and share alike. In principle, it is the same as if one would say, 'I will be one of five hundred persons who will bind themselves to contribute equal amounts, not exceeding five hundred dollars each, in building a first-class hotel in Galveston.' The proposition is not accepted and contract made so as to bind the purchaser, if. only two hundred and fifty persons join in it."

But it is obvious that this rule does not apply where the articles of association, or the circumstances which affect the interpretation of the agreement to take stock, show an intention that the corporation shall be fully organized and commence business before shares amounting to the full capital stock shall be subscribed. There can be no implied agreement to a particular effect when the express contract is to the contrary. Neither does the condition arise by implication under the general rule where the circumstances, which enter into the agreement of the subscribers and throw light upon its intent, show no such condition was understood. Like other contracts, an agreement to take shares in the capital stock of a corporation is governed by its intention, expressed or implied. So long and to the extent parties are free to make contracts, they are bound to peform them according to the intention. *Boston, Barre & Gardner R. Co.* v. *Wellington,* 113 Mass., 79; *Penobscot & Kennebec R. Co.* v. *Bartlett,* 12 Gray, 244; *Bucksport, etc., R. Co.* v. *Buck,* 65 Me., 536; *Boston & Albany R. Co.* v. *Pearson,* 128 Mass., 445; Morawetz on Private Corporations (2d ed.), sec. 410.

The articles of association subscribed by Trimble contains the following provision: "The amount of the capital stock of the said corporation shall be fifty thousand dollars, of which fourteen thousand five hundred have been subscribed by the corporators aforesaid, and the residue may be issued and disposed of as the board of directors may from time to time

order and direct." No implication arises from this provision that the corporation was to postpone the prosecution of its enterprise until all the capital stock was subscribed. There does not appear any reason why subscriptions for the remainder of the stock should not, without postponement, be solicited and received if such was the intention. The most reasonable inference to be drawn from it is that the $14,500 was all the money the corporation needed for the commencement of business, and that the residue of the stock was to be solicited and received from time to time as the board of directors ascertained and determined that the money to be derived therefrom was needed in the business of the corporation. *Lexington & West Cambridge R. Co.* v. *Chandler*, 13 Met., 311. The fact was, it began business as soon as the $14,500 was subscribed and paid, and after that Trimble agreed to take and pay the $500 of the stock subscribed by him. From this it is evident that there was, and could be, no implied condition in his agreement, that the corporation should not begin business until all the capital stock was taken ; neither was there an implied understanding that he should not be required to pay anything until that time. The corporation was engaged in business when he subscribed. It was evident that it would need money in the prosecution of its enterprise ; for, if it would not, there was no necessity for his subscription. He was not to be an honorary member. But, on the contrary, the manifest understanding was that he should pay on his shares as the board of directors should ascertain and determine that the money he agreed to pay was needed. *Nutter* v. *Lexington & West Cambridge R. Co.*, 6 Gray, 85 ; 1 Morawetz on Private Corporations (2d ed.), sec. 142, and cases cited.

Trimble was liable to pay the assessments upon his shares in the capital stock. The judgment of the court below is therefore reversed, and this cause is remanded with instructions to the court below to enter judgment in favor of appellant against him for the $500 and lawful interest on each assessment on his shares from the time the same was due, according to the findings of the facts by the circuit court.