DANIEL FISH, RECEIVER (WESTERN REALTY COMPANY, SUBSTITUTED PLAINTIFF), *vs.* ANDREW H. SMITH.

SAME *vs.* HENRY ROGERS.

SAME *vs.* EBENEZER GILBERT.

Third Judicial District, Bridgeport, October Term, 1900.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The contract obligation which a citizen of one State assumes by becoming a stockholder in a corporation of another State, depends largely upon the laws of the latter. If they provide for the winding up of

insolvent corporations through the agency of receivers, and empower its courts to call in any unpaid capital stock and make it payable to and collectible by the receiver, the latter becomes the statutory successor of the corporation and occupies the position of a substituted promisee, and as such can sue the local stockholder and promisor in his State to recover the balance due on his shares of stock.

All the stockholders in a corporation against which a suit is brought by a creditor alleging its insolvency and praying for the appointment of a receiver, are parties to the action by representation through the corporation, certainly up to the date of the interlocutory judgment declaring it insolvent and appointing a receiver; and therefore none of them can collaterally attack the validity of that appointment. The judgment of such court is also conclusive upon the question of the necessity of collecting all the unpaid capital stock in order to pay its debts, in an action brought by the receiver against a delinquent stockholder in another State ; and is equally effective in a suit brought by an assignee of the receiver.

In the present case the complaint, after setting forth the judicial proceedings in the foreign State, alleged that $500 was due from the defendant upon his shares, that its payment was necessary to meet the debts of the corporation, and that the defendant had due notice of the call and had refused to pay anything. *Held* that these allegations set forth a valid cause of action at law.

The complaint alleged that the corporation was organized with an authorized capital stock of $500,000, and immediately thereafter commenced to do business as such corporation. *Held* that these averments implied that all of the authorized capital which was necessary to be subscribed before business could be transacted, had been legally taken.

A refusal to sign a bill of exceptions taken to preliminary rulings, upon the ground that all the questions thus presented could be made upon the trial, is erroneous; but becomes harmless if such questions are again raised and decided on the trial.

An assignment of a claim pending suit thereon, calls for no alteration or amendment in the complaint, but only for an application for a change of parties. If granted, the name of the party substituted should appear in the judgment file.

A *prima facie* right in the assignee is enough to justify an order for his substitution as a party plaintiff.

A stockholder who repeatedly receives dividends on shares which he knows have not been paid in full, cannot question the validity of the corporate organization when the company becomes insolvent and a suit is brought by the receiver to collect the balance due on his shares.

A subscription to the capital stock of a corporation, made in 1889 and payable in 1891, provided that the subscriber's liability should be cancelled when the amount of the stock subscribed by him was

issued either to him or to others named by him, or if the amount of stock requisite to commence business ($500,000) should have been secured from other subscribers before 1891. *Held* that this was a valid subscription.

The amended complaint alleged that the company was incorporated with an authorized capital stock of $800,000. The answer denied that that amount of stock had been secured. The reply averred that by the laws of the State and articles of association under which the company was organized, it was authorized to exercise corporate powers and to transact business whenever $500,000 of its capital stock had been subscribed; and that such amount had been duly subscribed. *Held* that the reply was consistent with the complaint and was sufficient, if true, to avoid the defense; and that the trial court erred in expunging it.

A foreign law is always to be proved as a fact.

An appellant ought not to profit by an error into which he led the trial court.

The liability of a stockholder to respond to calls upon his shares, is an asset which the receiver can sell and the purchaser collect by suit.

The right of a Minnesota receiver, under a statute of that State, to sell the assets of an insolvent Minnesota corporation to himself as a trustee for creditors in satisfaction of their claims, including a personal claim of his own, is one for the determination of the Minnesota court in the receivership suit, and its adjudication, unappealed from, is conclusive upon the courts of this State in a suit brought here by the purchaser to recover unpaid stock from shareholders who were parties, by representation, to the receivership proceedings in Minnesota.

The stock books of a corporation are not admissible in its favor to prove that the defendant is a shareholder, where this is in issue.

Where the relation of shareholder has been otherwise shown to exist, the stock certificate book and the stock ledgers of the corporation are admissible to aid in determining when it commenced and what, if anything, has been paid on the shares.

A certificate by a public officer of another State concerning the organization of a corporation therein, which recites that the signers of certain articles and their associates were several years before " legally organized and established as, and were thereby made, an existing corporation," is a mere narrative of past occurrences and an expression of opinion as to their legal effect, and as such is inadmissible in our courts, even if it might be admissible, under a statute of such other State, in its courts.

Statements on the margin of a stock certificate, showing the amount of the capital stock, the number of shares and the par value of each, are as much a part of the certificate as they would have been if embodied in the printed portion thereof.

Argued October 24th—decided December 18th, 1900.

ACTIONS to recover balances claimed to be due upon certain shares of the capital stock of an insolvent corporation in the hands of a receiver, brought to the Superior Court in New Haven County where demurrers to the complaints were overruled (*Roraback, J.*) and, after motions to substitute the Western Realty Company as party plaintiff had been granted (*Elmer, J.*), the causes were tried to the jury before *Ralph Wheeler, J.;* verdict and judgment for the plaintiff in each case, and appeal by the respective defendants for alleged errors in the rulings and charge of the court. The defendants also moved for a new trial for a verdict against evidence, which the trial court denied. *No error.*

The other facts stated in the finding, so far as they are material, are given in the opinion.

*Edward H. Rogers*, with whom was *A. McClellan Mathewson*, for the appellants (defendants).

*Edward B. Bennett*, for the appellee (plaintiff).

BALDWIN, J. The action against the defendant Smith was originally brought by a receiver appointed by a court of the State of Minnesota, to recover an unpaid balance on certain shares held by said Smith, a citizen of Connecticut, in the Northern Trust Company, a Minnesota corporation. The Minnesota proceedings were brought by a creditor of the corporation against it, and the interlocutory judgment appointing the receiver declared that it was insolvent. In a subsequent interlocutory judgment, it was found that to pay its debts the whole amount unpaid upon the par value of its capital stock would be required in addition to its other assets, and each of its shareholders was required to pay any balance remaining unpaid upon his shares to the receiver, who was also empowered to sue therefor in any State wherein the shareholders might reside or be found.

A citizen of one State who becomes a shareholder in a corporation created under the laws of another, enters into contract relations the extent and obligation of which depend

largely upon those laws. If his shares have not been fully paid up, his obligation to respond to calls made by the corporation binds him also to respond to calls which the corporation ought to have made, but which, by reason of its default in that respect, have been otherwise made in conformity with the laws regulating its affairs.

When the defendant acquired his stock in the Northern Trust Company, there were in existence statutes of Minnesota providing for winding up the affairs of insolvent corporations on a creditor's petition, through the agency of a receiver. In sequestration proceedings of that nature the court could call in any unpaid balance of the capital stock for which the corporation had neglected to call, and the collection of which was necessary to meet its liabilities. The defendant, by his contract of membership, came under the obligation to respond to any demand that might thus be made by the proper court in Minnesota. There the corporaation was created. There it was subject to the jurisdiction of the courts. There, should it become insolvent, its affairs would be wound up by judicial proceedings. His obligation to pay the balance due upon his shares was a conditional one. He agreed to pay it when called for by the corporation; but this did not mean that if the corporation wrongfully neglected to make the call he was never to pay it. The law of Minnesota had provided for such a contingency. It had armed, in that case, one of its courts with power to appoint a receiver, and require payment to be made to him. This law entered into the obligation of the defendant's contract. The call made under it converted that obligation from a conditional one into an absolute one, and made the receiver the party to whom its performance was due. *Marson* v. *Deither*, 49 Minn. 423, 52 Northwestern Rep. 38. He was, in effect, the statutory successor of the insolvent corporation. Its affairs were to be managed under the laws of Minnesota, while it was a solvent and going concern, by a board of directors; when it ceased to be such, by a receiver appointed in sequestration proceedings. *Relfe* v. *Rundle*,

103 U. S. 222, 225; *Parsons* v. *Charter Oak Life Ins. Co.*, 31 Fed. Rep. 305; *Hale* v. *Hardon*, 37 C. C. A. 240.

In legal effect, then, part of the obligation assumed by the defendant upon entering the Northern Trust Company was that, in case of its insolvency before he had been called upon to pay the balance due upon his shares, he would pay it, should it be needed to satisfy creditors, to a receiver duly appointed in Minnesota. The plaintiff in this action occupied that position, and so became as fully the payee under the defendant's contract of membership as the corporation originally was. *Mann* v. *Cooke*, 20 Conn. 178, 185, 187; *Johnston* v. *Allis*, 71 id. 207, 217; *Howarth* v. *Lombard*, 175 Mass. 570, 56 Northeastern Rep. 888.

The defendant was a party to the Minnesota action, by representation through the corporation, up to the date at least of the interlocutory judgment declaring it an insolvent debtor and appointing a receiver. *Hawkins* v. *Glenn*, 131 U. S. 319; *Great Western Tel. Co.* v. *Purdy*, 162 id. 329, 336; *Hanson* v. *Davison*, 73 Minn. 454, 462. He cannot therefore dispute the validity of that appointment.

The defendant having promised, in legal contemplation, to pay the sum now in question to any receiver properly appointed, the plaintiff was entitled to bring suit on this contract in any State where due service of process could be made. His action was founded, not on the right of a foreign receiver to sue upon demands in favor of the party he may represent, but on the right of a substituted promisee to sue a promisor whose contract provided for such substitution.

The defendant's obligation was such, also, as to imply a promise to pay the sum in controversy to any receiver of the assets of the Northern Trust Company in this State, who might be appointed by a court of this State. The substance of his contract, in the event of its insolvency, was to pay into the trust fund, of which, upon that condition of its affairs, whatever might remain unpaid upon his shares would be a part, all that he thus owed the trust estate. The corporation might sue for it, if its management continued to be in the hands of its own officers. If, in that case, the corporation did not sue,

he could be held to answer for it on a creditor's bill. Should, on the other hand, the management of the corporate estate, by reason of its insolvency, be taken in hand by a proper court, his obligation would be to make payment to such agent or trustee as that court might constitute for that purpose. The court might be a Minnesota one. It might be a bankruptcy court of the United States. It might, under certain conditions, be a court of Connecticut. No receiver, however, has been appointed here. No bankruptcy proceedings have been had. The general receiver, appointed in Minnesota, when this action was instituted, was the only party occupying the position of a trustee of this trust fund, and it is to him, under these circumstances, that the law implies a promise by the defendant to pay what the corporation is no longer able to collect.

The complaint, besides setting forth the doings in the Minnesota action, alleges that $500 is due from the defendant upon his shares; that its payment is required in order to meet the debts of the corporation; that he received due notice of the call by the court; and that he has refused to make payment, though it has been duly demanded.

A good cause of action at law was thus set forth, and his original demurrer to the complaint was properly overruled.

He subsequently demurred again, for want of an allegation that all the authorized capital stock of the company had been subscribed for. The averments as to this were, that it was incorporated under the laws of Minnesota, with an authorized capital stock of $500,000, and immediately thereafter commenced the transaction of business as such corporation. These were sufficient. It could not legally have commenced business until whatever amount of capital stock the laws of Minnesota required had been legally taken. Illegality in its action in this particular was not to be presumed. If there had been any, it was matter of defense.

Pending the action, Fish resigned his office and his successors were substituted as plaintiffs by order of court. This action was proper. Whatever duty the defendant owed to the original receiver, he would equally owe to his successors.

Subsequently the latter were duly discharged from their office, and the suit in Minnesota, in which they were appointed, was dismissed by a decree approving all their previous doings. One of the latter had been an assignment, by special order of court, to the Western Realty Company, a New Jersey corporation, of the demand against the present defendant. The Superior Court found that it thereby became the *bona fide* owner of the cause of action, and thereupon, upon its application, ordered its substitution as plaintiff. The defendant tendered a bill of exceptions to this order, setting forth, among other things, that the court had overruled his claim that the application could not be granted without proof that the receivers made the assignment for a valuable consideration. The court refused to sign this bill, on the ground that all the questions which it presented could be made upon the trial.

This action was erroneous. A defendant against whose objection an order for substituting a new plaintiff is made, and made, as he claims, on insufficient evidence, is entitled to the allowance of a proper bill of exceptions by the judge from whom the order is obtained. No harm, however, was done to the defendant by the ruling, as the only substantial question which he desired to present could be and was in fact made at the trial, and thus became a proper ground of appeal. It was first brought to the attention of the court, after the dismissal of the Minnesota action and the discharge of the receiver had been suggested by the defendant upon the record. The then plaintiffs met this by filing a paper entitled in the cause as "Reasons for maintenance of the suit in their names." The new facts stated in this paper were, that during the progress of the Minnesota suit the court, after due hearing, approved an offer which had been made to the receivers for the purchase of all the assets of the company, in consideration of the full satisfaction and release of all claims of creditors against it; that pursuant to said order of approval, the demand in the present action was afterwards duly assigned by the receivers to the Western Realty Company as the assignee of the party making said offer; and that

their action in this respect had been approved and confirmed by an order of court, passed on due hearing, in which it was found that said demand and all the other assets of the Northern Trust Company had been duly assigned to the Western Realty Company. To this paper the defendant demurred, because, among other things, it showed that all claims of creditors had been satisfied and released, and that the receivers had no longer any interest in the cause of action, and did not show that their assignment had been made on any substantial consideration. The demurrer was sustained, whereupon the Western Realty Company filed an application to be substituted as plaintiff, alleging simply that the plaintiffs, since the commencement of the action, had assigned the cause of action to it, and that it was the *bona fide* owner of it. This application was found true and the order of substitution made.

It is now assigned for error that the complaint should have been, but never was, amended so as to support this substitution and to make the Western Realty Company the plaintiff of record. It could not have been so amended. The demand was one purely for legal relief, and no new matter occurring during the pendency of the action could be introduced to support or enlarge it. *Woodbridge* v. *Pratt & Whitney Co.*, 69 Conn. 304, 334; *Goodrich* v. *Stanton*, 71 id. 418, 425.

The manner in which to bring a title taken by an assignment pending suit to the attention of the court is by and in an application for a change of parties. Rules of Court (Ed. of 1899), §§ 123, 183. No new cause of action, in such case, has arisen; there has been simply a transfer of the right of action for the original cause.

The application filed by the Western Realty Company may have been demurrable, but no demurrer was filed, and, in the absence of any, the court had a right to take into view the statement in the "Reasons for maintenance of the suit in their names," so recently filed by the receivers. The truth of these had been admitted by demurrer, and they showed that there was what the Minnesota court had determined to be a sufficient consideration to uphold the assignment.

This was sufficient to justify the order of substitution. It gave a *prima facie* right to it, and that was enough. On the trial, the new plaintiff would still be bound to make out his title to the satisfaction of the jury. As to that inquiry his application served the office of a complaint. He could not recover judgment without establishing the validity of the assignment which he had there alleged.

The substitution was effected when the order that it be made was passed. Nothing further was required to put the new plaintiff in the shoes of the former plaintiffs. It was bound to prove the cause of action in their favor, as they had alleged it, in order to support the right of action in itself. Their names were properly allowed to remain in the complaint, and its name was properly substituted for theirs in the judgment file.

The defendant contested his liability, before the jury, on the ground, among others, that the Northern Trust Company was never really incorporated, for want of subscriptions for the necessary amount of capital stock. On this point the jury were correctly instructed that, if there was an attempt to organize such a corporation in 1889, under the laws of Minnesota, and the company thereupon commenced business as a corporation, and continued to do such business for seven years and until it was adjudicated insolvent and a receiver appointed, and if, at the latter date, the defendant was a registered shareholder who had previously paid instalments on his stock and received dividends thereon, and who held certificates for his shares showing on their face that they were not fully paid up, then he was liable to the receiver for any unpaid balance which he had been ordered to pay to him by the court in the Minnesota suit.

There was evidence that the defendant was an original shareholder, that he held a certificate for his shares, issued in 1892, which stated that the face value of each was $100, on which $50 had been paid; and that between 1892 and 1896 he received and accepted five dividends upon this stock. If these were found to be the facts, he was estopped from asserting subsequently, and after the company had been ad-

judged insolvent, that it never became a corporation.  *Canfield* v. *Gregory*, 66 Conn. 9.

The first paragraph of the complaint, as amended, alleged that it was duly incorporated, with an authorized capital of $800,000, and this paragraph was denied by the " First defense."  The charge was appropriate to guide the jury in finding the issue thus closed, notwithstanding no estoppel *in pais* had been specially declared on.  *Plumb* v. *Curtis*, 66 Conn. 154, 173.

Under the laws of Minnesota, notwithstanding the provision in the articles of association of the corporation that its capital stock should be $800,000, it was authorized to do business whenever $500,000 of this was subscribed and $100,000 of that amount deposited with the state auditor. Statutes, Minnesota (Kelly's Ed. of 1891), § 2696; Rev. of 1894, §§ 2843, 2844.  The plaintiff introduced evidence that these conditions were duly complied with.  Whether they had been, depended on the validity of a subscription for 800 shares of $100 each, made in 1889, but payable in 1891, conditioned as follows: " The stock hereby subscribed may be issued in the name of any person or persons designated by the subscriber, and when the amount of stock here subscribed is issued at the request of any subscriber to himself or any other person, the subscriber's liability hereunder is canceled; and if the subscriptions, aside from this, shall equal or exceed $500,000 on the date named, to wit, January 1st, 1891, then this subscription to be null; otherwise, to be of full force."

The jury were properly instructed that this was a valid subscription.  It was of no consequence that the subscribers might be discharged by the issue to others, at their request, of the shares thus subscribed for, or by the obtaining of other subscriptions to make up the requisite $500,000.  In either case, the company would receive the same amount of money, though from different persons.

The stipulation in the articles of association for a capital of $800,000, was to be construed in subordination to the statute which authorized business to be commenced when a

less amount should be secured. For all indebtedness incurred in the course of such business, the shareholders were liable to call. *Boston, B. & G. R. Co.* v. *Wellington,* 113 Mass. 79.

It is contended that an incorporation on the basis of a capital less in amount than $800,000, could not be relied on under the issues closed by the pleadings.

The amended complaint alleged an incorporation with an authorized capital stock of $800,000. The answer denied that that amount of stock had been secured. The plaintiff then replied that " by said articles of association and the provisions of the laws of Minnesota under which said corporation was organized, it was authorized to exercise its corporate powers and to transact business whenever $500,000 of its capital stock had been subscribed for; that said sum of $500,000 was duly subscribed for as required by said laws and in conformity thereto, and that thereafter it began the exercise of its corporate powers and the transaction of business." This reply was expunged on the defendant's motion.

The order for expunging it was erroneous. The reply stated matters of fact, consistent with the complaint, and sufficient, if true, to avoid the defense. A foreign law is always to be proved as a fact. *Hanley* v. *Donoghue,* 116 U. S. 1.

The defendant ought not to profit by the error into which he led the trial court. It does not appear that he brought the point now under consideration to the attention of the judge before whom the trial to the jury was conducted. Had he done so, an amendment of the complaint would, no doubt, have been allowed. Without determining whether such an amendment was necessary, we are of opinion that no question of variance, founded upon the want of one, ought now to be considered.

The jury were further told that the averment in the complaint that all the unpaid part of the capital stock of the Northern Trust Company would be required to meet its liabilities was conclusively proved by the record of the Minnesota action, in which this fact was found as the basis of an order

of court made in 1897, on the petition of the receiver, calling in all sums so remaining unpaid.

This instruction was correct, if the defendant at the date of that order was a party to that suit, or in such privity with a party that the latter can be regarded as representing him. The Northern Trust Company, as has been already said, thus represented him up to the time when it was, in 1896, adjudicated to be insolvent and placed in the hands of a receiver. After that time, while it remained a party upon the record, it was necessarily unable to defend itself, or those for whom it might speak, effectually, for it had been deprived of all its financial means. This, however, did not make its shareholders any the less in privity with it. Their relations to it in this respect were fixed by law, and were not to be varied by its loss of property. The adjudication of its insolvency, indeed, made it certain that a call for the balances remaining unpaid on their shares would be necessary, for it could not be insolvent unless its liabilities exceeded its assets, including its entire capital stock, paid and unpaid.

What effect the record of the Minnesota action was to receive in determining these facts was a question dependent on the construction of United States Revised Statutes, § 905, and the Superior Court properly followed the decisions, as to that, of the Supreme Court of the United States. *Great Western Tel. Co.* v. *Purdy*, 162 U. S. 329, 336.

The order of assessment was unaffected by the discharge of the receivers. Their cause of action had previously been assigned to the Western Realty Company, and that had the same right as its assignors to rely on the record of the call as proof of its necessity, in any State in which a shareholder might be sued.

It is urged that the defendant is under no liability except to creditors, and that there are now no creditors, since all demands were satisfied by the Western Realty Company. His original liability was to the corporation. Had it never owed a debt to any one, he could still have been compelled by the directors to pay calls. Having, however, become so deeply indebted as to be insolvent, this liability of his was sold, after

a call of the court had made it payable, as a means of satisfying its creditors. That it was a proper subject of sale there can be no doubt, nor could it be discharged by the fact that the price paid for it made the corporation solvent.

The right to make the particular sale now in question is rested on a statute of Minnesota, passed in 1897. *Merchants' Nat. Bank* v. *Northwestern M. & C. Co.*, 48 Minn. 361. This provides that in such a suit against a corporation as that now in question, if the court finds that any of its assets can be turned over to any of its creditors in full satisfaction of their claims, it may order the receiver to invite bids from creditors for such assets, for that purpose, and, on the coming in of the report, may direct the acceptance of any such bid and a conveyance accordingly.

The plaintiff offered evidence to prove that Louis P. Henry and Walter L. Badger, who were the receivers appointed to succeed Fish, the original plaintiff, obtained, upon due hearing had after notice by mail to every shareholder of the Northern Trust Company, including the defendant, orders under this statute, approving a bid which they had made, as trustees of certain of its creditors, for the purchase of all its assets in consideration of the full satisfaction and release of all outstanding claims and liabilities against it; and directing them as receivers to transfer all such assets to themselves as trustees, or to such corporation as they might designate, upon filing in court releases of all such claims and liabilities; and that they thereupon designated the Western Realty Company as the transferee, and consummated the sale, agreeably to these orders, by an assignment afterwards ratified and confirmed by the court.

The record of the Minnesota action showed that Henry and Badger were each creditors of the company, individually, and so that they sold as receivers to themselves as trustees and also as beneficiaries.

But that this sale and assignment was warranted by the laws of Minnesota was necessarily adjudicated by the District Court of Hennepin county, before which all these proceedings were had. It could not otherwise have made the order of

confirmation. No claim is made that any appeal was taken from that order. It stands, therefore, as the authoritative declaration of the judicial department of another State as to what the law of that State is. It was made in a cause in which not only was the defendant a party by representation, but in which, as the record shows, notice of this particular proceeding had been mailed to him, by order of court. Under these circumstances it is conclusive in the courts of Connecticut as to the construction of the Minnesota statute, and the power of its courts of equitable jurisdiction to allow a receiver to make sale to himself. *Laing* v. *Rigney*, 160 U. S. 531, 542.

It may be, as is suggested by the counsel for the defendant, that the purchase was a speculative one, and the price low. *Dwinnell* v. *Badger*, 74 Minn. 405; *Hospes* v. *Northwestern M. & C. Co.*, 48 id. 174. The place to urge such objections was before the District Court of Hennepin county. If made there, they must have been overruled: if not made, they were waived.

The Western Realty Company was incorporated to purchase and control all the assets of the Northern Trust Company. The right to call upon the defendant for any unpaid balance due upon his shares was one of those assets, and the Western Realty Company therefore had power to purchase it.

The plaintiff, after introducing in evidence the certificate of stock held by the defendant, offered the company's stock certificate books and stock ledgers to show that he was an original shareholder, and that his stock was only partly paid. These books were properly admitted. It has been said by some courts that a corporation's stock books are in all cases evidence in its favor to show that those whose names it has entered as shareholders are such in fact. *Turnbull* v. *Payson*, 95 U. S. 418. This doctrine has never obtained in this State, and rests on no solid principle. *Carey* v. *Williams*, 79 Fed. Rep. 906, 51 U. S. App. 204. But where the relation of shareholder has been otherwise shown to exist, the books of the corporation become admissible to aid in determining when it commenced and what, if anything, has been

paid in upon the shares. Shareholders in a moneyed corporation, by their contract of membership, constitute it their agent to keep such stock books as are usually kept by similar organizations ; and the entries made in due course of business are admissible against them, though not conclusive. Those now in question were not only of the usual nature, but of a kind expressly required by the laws of Minnesota. Minn. Stat. (Kelly's Ed. of 1891), § 2644 ; Rev. of 1894, § 2599.

The plaintiff was also permitted to introduce in evidence a certificate from the secretary of State of Minnesota, under the seal of the State, given in 1897, pending the present action, to the effect that certain individuals, therein named, filed proper articles of incorporation in his office on March 18th, 1889, "under the name of the St. Paul and Minneapolis Mortgage Loan and Trust Company, now and since December 14th, 1893, Northern Trust Company," with a capital of $800,000, and were thereby made an existing corporation.

A statute of Minnesota, enacted in April, 1889 (Acts of 1889, Chap. 226, § 1; Kelly's Ed., 1891, § 3147; Stat. Rev. of 1894, §§ 3394, 3395), provides that whenever any corporation thereafter organized under the general incorporation laws shall have complied with all the statutory requisites, the secretary of State shall issue a certificate of a prescribed form. In this he is to certify, among other things, that the subscribers to the articles of incorporation, "their associates and successors, are legally organized and established as, and are hereby made, an existing corporation." A certificate in this form "shall be *prima facie* evidence of the existence of such corporation," and it is to be recorded. The second section of this statute also provides that upon application from any corporation which has been duly incorporated previously under the general incorporation laws, and payment of a certain fee, the secretary of State "shall thereupon issue a certificate in the form prescribed in the preceding section," which shall have the same force and effect as attach to those issued under authority of that section.

The certificate admitted in evidence by the Superior Court was not one of the form thus prescribed. One object of the

statute evidently was to create a convenient method of proving the due organization of a corporation formed under articles of association filed in the office of the secretary of State. Another seems to be a provision for a new step in the process of incorporation. The secretary was to examine the files, and if the papers appeared to be such as to satisfy the requirements of the law, to do an act which "made" the associates and their successors and assigns an existing corporation. The certificate now in question is dated in 1897. It refers to articles of incorporation filed on March 18th, 1889, and to a change of name made on December 14th, 1893, and states that the signers of the articles, "their associates and successors, were legally organized and established as and were thereby made an existing corporation under the name of the St. Paul and Minneapolis Mortgage Loan and Trust Company." This is a narrative of long past occurrences, and the expression of an opinion as to their legal effect. If admissible for any purposes in the courts of Minnesota, as to which we have no occasion to inquire, it is in those of Connecticut mere heresay, and should have been excluded. No statute of Minnesota could give it the force of evidence in another jurisdiction.

No injury, however, could have been done to the defendant by its admission. It is true that it may have influenced the jury to find that the company was legally incorporated, and that their verdict may have been based on that ground. They were instructed by the court that this certificate was competent evidence tending to show that the executive officers of the State authorized the company to proceed with corporate business upon the assumption that it was duly organized and entitled to act, and so to show either its legal or *de facto* existence and its change of name. But a certificate from the secretary of State, dated in 1893, had also been introduced, without objection, which had been given shortly after the change of name, by which those originally associating as the St. Paul and Minneapolis Mortgage Loan and Trust Company had become the Northern Trust Company. This certificate was in the form prescribed by the statute, and was

presumably offered to show that the final act contemplated
by the legislature had been performed, and the incorporators
thereby "made" an existing corporation by the name of the
Northern Trust Company.    As such it was admissible in our
courts to show, not that the statements which it contained
were true, but the fact that they were thus officially made.
The defendant had also laid in a certified copy of the origi-
nal articles of association filed in 1889.    The jury had been
informed as to what were the laws of Minnesota under which
incorporation had been sought.    Under those laws, the arti-
cles of association were, on their face, sufficient to support a
corporate organization, provided a capital stock of $500,000
was subscribed, and the proper deposit made with the State
auditor.    Stat. Minn. Kelly's Ed. of 1891, § 2696; Rev. of
1894, §§ 2843, 2844.    Whether $500,000 had thus been sub-
scribed and the deposit duly made, were questions which
were properly submitted.    It was not claimed before the
Superior Court, nor has it been claimed here, that the incor-
poration of the company was defective in any other respect
than that relating to the amount of its capital.    That it was
a *de facto* corporation had been established by the pleadings.
The complaint alleged due incorporation, and the answer ad-
mitted that "the articles of association of said corporation
specified that its capital stock should be $800,000, divided
into 800 shares of $100 each," and that "the defendant be-
came the owner and holder of ten shares of the capital stock
of said corporation," and "purchased said stock from said
corporation in the open market."    That the corporation was
not a *de jure* one, unless its actual capital was at least
$500,000, the jury had been distinctly instructed.

Under these circumstances, and taking the charge as a
whole, the verdict cannot have been affected by the intro-
duction of the certificate given in 1897.

The motion to set aside the verdict as against the evidence
was properly denied.    No question was presented by it which
was not otherwise raised, except that in respect to the effect
of the defendant's testimony that he was assured by the
brokers who, as agents for the company, induced him to take

his shares, that there was nothing more to be paid on them. Even if this could have been a defense to a call by the company, it could, after he had allowed eight years to pass in silence, be none to one made upon its insolvency, by order of court, for the benefit of creditors.

Other assignments of error are made, but they have not been argued, and are wholly without merit.

The case against the administrator of the estate of Ebenezer Gilbert differs in no respect from that against Andrew H. Smith, and its disposition is governed by the same principles.

That against Henry Rogers presents a single point which is new.

His certificate of stock was dated in 1889, and stated that he owned " ten shares of the capital stock of the St. Paul and Minneapolis Mortgage, Loan and Trust Company, on each of which had been paid the sum of fifty dollars." The certificate was engraved with a heavy ornamental border, on one side of which were introduced the words, " Capital stock $800,000 " ; and on the other the words, " 8,000 shares, $100 each."

These marginal statements were as much a part of the certificate as if they had been contained in the body of it. The paper therefore showed upon its face that the shares were not fully paid up.

There is no error in either judgment.

In this opinion the other judges concurred.