## WILLIAM BRADFORD TYLER *v.* RECEIVERS OF THE CAMBRIDGE FURNITURE COMPANY.
[No. 87, October Term, 1930.]

*Decided January 16th, 1931.*

334

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*T. Sangston Insley,* for the appellant.

*William D. Gould, 3rd,* for the appellees.

ADKINS, J., delivered the opinion of the Court..

The Cambridge Furniture Company sued appellant for unpaid subscription by appellant to ten shares of the company's capital stock. After the suit was filed, the corporation was adjudged insolvent, and on proper suggestion to the court the appellees were substituted as plaintiffs.

The only questions raised by this appeal are: 1. Under the provisions of the charter of the plaintiff corporation, can the defendant be made to pay for ten shares of the stock of the corporation for which he subscribed, before all the stock authorized by the charter has been sold or unconditionally subscribed for? 2. If a suit can be maintained, what is the measure of damages?

The first question is presented by the overruling of defendant's demurrer to the special count in the declaration setting out the contract of subscription, but not alleging that all the stock had been sold or subscribed for; by the ruling sustaining plaintiff's demurrer to the plea which challenged the right of recovery on the facts stated; and by rulings excluding evidence offered by defendant tending to show that all the authorized stock had not been subscribed for; and by the refusal of defendant's demurrer prayer.

The second question was raised by the exceptions to the ruling on an offer to show the market value of the stock, the defendant contending that the measure of damages was the market value of the stock and not the amount of the unpaid subscription. The case was tried by the court without a

jury and a verdict rendered for the plaintiffs for the amount of the unpaid subscription. This appeal is from the judgment entered on that verdict. We find no error in any of the rulings. Nothing is involved in any of the exceptions except the propositions of law above mentioned.

On the first question appellant relies upon *Morgan v. Landstreet,* 109 Md. 558, 72 A. 399, and earlier cases therein cited, in which it was held that, where the capital stock and the number of shares are fixed by the charter, no assessment can be lawfully made on the shares of any subscriber until the whole number of shares has been taken. It was said in *Gettysburg Bank v. Brown,* 95 Md. 367, 52 A. 975, that this rule was founded upon the theory that the subscription is made upon the implied understanding that the entire amount of stock fixed by the charter is necessary for the successful prosecution of the business for which the company was incorporated.

These decisions were made under the very restricted Maryland corporation laws codified in the Code of 1904. These laws were found by experience to be so restricted and hampering as to be prohibitive of successful operation by large enterprises, and consequently resort was generally had to incorporation under the laws of other states. It is a matter of history, and of such general knowledge from the discussion throughout the state preceding and at the time of the passage of the Act of 1916, chapter 596, codified as article 23 of the Code of 1924, as to be judicially noticed, that the new act was passed in response to a general demand for a liberalization of the corporation laws of the state, so that commercial and other enterprises of our own people could be incorporated without being required to seek legal homes out of the state, and others from outside might find it desirable to obtain charters here. To this end many of the limitations in the law as it existed at the time of the decisions referred to, and which made those decisions necessary, were avoided in the new act. And among the important changes were those permitting charters framed with a view to future growth. For instance, provision was made for the creation of varying

classes of stock; for converting surplus earnings into stock dividends; and for a total amount of authorized stock greater than the necessities of the business might require at the time of incorporation.

Section 44 of article 23 of the Code of 1924 provides:

"The charter of any corporation of this state may empower the board of directors thereof to authorize the issuance from time to time of shares of its stock of any class and/or convertible securities for a certain specified consideration or certain specified considerations, subject to such limitations and restrictions, if any, as may be set forth in the charter or in the by-laws of the corporation. Such authorization, however, shall not be effective for the purposes of this section unless such charter shall set forth:

"(a) In the case of stock and/or convertible securities authorized to be issued for money, the maximum number of shares and/or the maximum amount of convertible securities authorized to be so issued and the minimum price to be received for each share of each class or the minimum price to be received for a given number of shares of one or more classes and/or for a given amount of convertible securities, as the case may be.

"(b) In the case of stock and/or convertible securities authorized to be issued for a consideration other than money, the number of shares of each class and/or the amount of convertible securities authorized to be issued therefor, a particular description of such consideration, showing its nature and character, and the actual value of such consideration as fixed by the incorporators, or by the board of directors in the case of an amendment to the charter.

"(c) The terms in detail upon which any convertible securities author:zed to be issued are convertible into stock of the corporation."

Under the authority of that section there was included in the charter of the plaintiff corporation the following provision: "Seventh: The Board of Directors of the Corporation is hereby empowered to authorize the issuance from time to time of not exceeding six thousand (6,000) fully paid and

non-assessable shares of common stock for money at not less than twenty-five dollars ($25.00), for each share thereof, subject to such limitations and restrictions, if any, as may be set forth in the By-Laws of the Corporation."

It is manifest that no such authority could have been given under the old law. It is also apparent that, with such a provision in the charter, no subscriber to stock was entitled to assume that operations would not begin until the entire amount of authorized stock was taken; and that the subscription could not have been made "upon the implied understanding that the entire amount of stock fixed by the charter is necessary for the successful prosecution of the business for which the company was incorporated," which was adopted in *Morgan v. Landstreet, supra*, as the theory on which the rule was founded on which that decision was based. Indeed, the court in that case indicates that the decision would have been different if the provision above quoted had been contained in the charter then under consideration. For it distinguishes the case it was deciding from *Arkadelphia Mills v. Trimble*, 54 Ark. 316, 15 S. W. 776, 777, relied on by the unsuccessful litigant, in that the charter in the Arkansas case contained the following provision, essentially the same as that in the present case, viz: "The amount of the capital stock of the said association shall be fifty thousand dollars, of which fourteen thousand five hundred dollars has been subscribed by the corporators aforesaid, *and the residue may be issued and disposed of as the board of directors may from time to time order and direct.*" (The italics are those of the court.)

In *Musgrave v. Morrison*, 54 Md. at page 164, it was said: "It may be obvious from the face of the charter itself, that the whole capital stock is not in any manner necessary to the organization of the company, and that the subscriber knew or had reason to know this at the time of his subscription."

It follows that the decisions of this court prior to the passage of the act codified in article 23 of the Code of 1924 are no longer controlling on the questions here at issue.

The question as to the measure of damages is raised by exceptions to rulings on evidence. The trial court refused to admit testimony as to the market value of the stock.

The true measure of damages in a case of this sort is fixed by sections 75 and 77 of article 23, Code 1924, as the amount of the subscription less the amount already paid in.

Fining no error in the rulings appealed from, the judgment will be affirmed.

*Judgment affirmed, with costs to appellees.*