D. C. McCONEY v. BELTON OIL & GAS COMPANY and Others.[1]

January 26, 1906.

Nos. 14,559—(168).

**Payment of Subscriptions to Stock.**

The evidence offered on behalf of appellants, for the purpose of showing that the stock subscribed for had been fully paid in consideration of the transfer to the company of certain property, was insufficient to justify a holding to that effect, but was sufficient to sustain a finding that appellants subscribed for the capital stock of the corporation and had paid nothing therefor.

**Transfer of Stock.**

It is the general rule, not changed by the laws of Arizona, that a stockholder's liability for unpaid subscriptions does not continue after a transfer of the stock, but follows the stock, except when transferred for the purpose of defrauding creditors. If a stockholder, who is indebted to the company on his subscription, transfers the stock without consideration and after the corporation has become insolvent and in debt, a prima facie case of fraudulent transfer is made out.

**Payment of Subscriptions—Complaint.**

Conceding that as between the parties the original capital stock of a corporation may be sold for a sum less than its par value, as to subsequent good faith creditors of the corporation the transaction is void, and the full par value may be collected. In this, an equitable action brought by a creditor of an insolvent corporation, the complaint alleged that a stockholder had subscribed for stock at par, and had not paid for the same. *Held*, the subscriber, under the circumstances of this case, cannot avoid the liability upon the ground that the complaint did not more specifically allege the nature of the transaction.

[1]Reported in 106 N. W. 900.

**Action against Stockholders.**

> Judgment having been recovered against the corporation in this state, where it maintained its principal place of business, and it appearing that it possessed no assets in Arizona, where it was incorporated, it was not necessary to secure judgment against the corporation in Arizona, preliminary to bringing an action against the stockholders in this state.

Action in the district court for Hennepin county by plaintiff, a judgment creditor of defendant, Belton Oil & Gas Company, an Arizona corporation, to recover the amount of such judgment from defendants, Edwin R. Williams, Albert Kime, Edgar A. Charles, P. L. Stickney, George E. Rolph, Grant H. Shannon and J. P. Coan, stockholders of the corporation, to the extent of the unpaid instalments upon their stock subscriptions. The case was tried before John Day Smith, J., who found in favor of plaintiff. From an order denying a motion for a new trial, the individual defendants, except Shannon, appealed. Affirmed.

*M. H. Boutelle, N. H. Chase, A. M. Higgins,* and *Charles S. Cairns,* for appellants.

*E. C. Garrigues* and *Cohen, Atwater & Shaw,* for respondent.

LEWIS, J.

Defendant corporation was organized under the laws of the territory of Arizona, with a capital stock of $200,000, and respondent, having secured judgment against the company, brought this action, the usual creditor's bill, against the corporation and its stockholders to reach and apply the amount of unpaid instalments of the capital stock to the payment and liquidation of respondent's claim. Appellants Williams, Kime, Charles, Rolph, and Coan answered, admitting that respondent was a judgment creditor, that they received the certificates of stock as alleged in the complaint, for a stipulated and agreed consideration, and that the same were fully paid for. Appellant Stickney answered, admitting the issue of the stock to him, and alleged that the same was fully paid, but that prior to the commencement of the action the stock had been assigned to G. H. Shannon, and had been transferred on the books of the company, and that under the laws of the territory of Arizona no liability attached to him after such transfer.

The court found that the company was organized under the laws of the territory of Arizona, with a capital stock of $200,000 divided into two hundred thousand shares of the par value of one dollar each; that between October 8 and December 31, 1902, respondent performed certain services for the company of the value of $2,454, and recovered judgment for the same in the district court of Hennepin county; that an execution was issued out of that court and returned unpaid and unsatisfied; that the company was insolvent and had no property or assets to meet the debt; and further found

> That the defendants Edwin R. Williams, Albert Kime, Edgar A. Charles, George E. Rolph, Grant H. Shannon, and J. P. Coan are each of them stockholders in and of said defendant company; and that prior to October 8, 1902, each of said last-mentioned defendants had subscribed for, and thereafter, and on October 27, 1902, had issued to them, received, and became then and there and ever since have been the owners and holders of, stock in and of said defendant company, in and to the respective amounts as follows, to wit: Edwin R. Williams, ten thousand shares, of the par value of $10,000; Albert Kime, twelve thousand five hundred shares, of the par value of $12,500; Edgar A. Charles, twelve thousand five hundred shares, of the par value of $12,500; George E. Rolph, twelve thousand five hundred shares, of the par value of $12,500; Grant H. Shannon, eighteen thousand seven hundred fifty shares of the par value of $18,750; and J. P. Coan, five hundred shares, of the par value of $500.

The court also found that defendant Coan had subscribed for the five hundred shares of the capital stock of the company upon the agreement that the stock should be issued to him, fully paid and non-assessable, for the sum of $50, that such agreement was accepted by the company and the stock duly issued, and that no other sum whatever had been paid by him therefor. The court also found that appellant Stickney subscribed for twelve thousand five hundred shares of stock on October 8; that the same was issued to him October 27, 1902, and that on May 20, 1903, he indorsed and transferred the same to G. H. Shannon; that the transfer was without consideration, and

made after the indebtedness of the company to respondent had been incurred, and after the company had become insolvent.

In the original finding the court found that none of the defendants had ever paid anything for the stock so issued to them by the company, except Coan, who had paid $50. Appellants moved the court to amend its findings by striking out such finding and inserting in place thereof one to the effect that the several appellants, except Coan, made their respective subscriptions for stock upon the agreement with the company that in payment therefor they should transfer, or cause to be transferred, to the company certain property consisting of oil leases in the state of Missouri, which the company agreed to accept in full for the subscription; that the property was accordingly transferred to the company pursuant to the agreement, and the stock issued to the several appellants in consideration thereof, and that the company accepted such leases in full payment of the stock. The court thereupon modified the finding as to payment, and found that prior to the organization of the company appellant Shannon was the owner of certain oil and mineral leases upon lands in Missouri, and that prior to the organization of the company it was agreed between him and appellants Williams, Kime, Stickney, Rolph, and Charles that the company should be organized under the laws of the territory of Arizona, and that Shannon would transfer to the company, when organized, the mineral leases held by him, and in return therefor there should be issued to him one hundred thousand shares of the stock of the company, fully paid up and nonassessable, and that in pursuance of such agreement the appellants subscribed for the several amounts of stock in the findings stated; that after the organization of the company, and at its first meeting of stockholders, a resolution was passed whereby the company accepted the assignments of the oil and mineral leases from Shannon, and directed and authorized the issuance of stock to Shannon to the amount of twenty one thousand two hundred fifty shares; to Williams ten thousand shares; to Kime, Stickney, Rolph, and Charles twelve thousand five hundred shares each; and to one E. H. Alton, eighteen thousand seven hundred fifty shares; that certificates of stock were accordingly issued to the parties for the respective amounts, and duly accepted and received by them, but that, except as above stated, neither of the ap-

pellants ever paid anything of value whatsoever for or on account of the stock so subscribed for, issued to, or received by them. The court further found

> That said oil and mineral leases have been of no value whatsoever to said defendant company; * * * that in all other respects the motion of said defendants Williams, Kime, Edgar, and Rolph be, and the same is hereby, denied.

1. Are the findings of the court supported by the evidence, and do the facts, as found by the court, make the several appellants liable, as subscribers for stock? If there is evidence tending to support the eighth finding of fact that the several appellants, except Coan, were original subscribers for stock in the company, then such stock was never paid for, unless the transactions with reference to the mineral leases, as outlined in the amended finding, constituted payment.

At the trial appellant Williams testified that he was treasurer of the company, that no money had ever been paid into the treasury by any of the appellants in considerations of the stock, but that certain leases were turned over to the company as consideration. An agreement for incorporation, of date September 20, 1902, executed by all the appellants, except Coan, was received in evidence, and it sets forth the object of the company to be the leasing of three hundred twenty acres of land in the Belton oil fields, Missouri, and to operate the leases for oil, gas, and minerals, and to engage in the general business of operating for and handling of oil, gas, and minerals, upon the following conditions: Stating the capitalization of two hundred thousand shares of the par value of one dollar per share, and that one hundred thousand shares of the capital stock should be set aside as treasury stock; that G. H. Shannon be paid for the leases of the described lands, one hundred thousand shares of the capital stock of the company, the deal to be closed on or before October 1, 1902; that G. H. Shannon was authorized to prepare the organization papers, appointing the company's agent for the territory of Arizona, and paying the charges for his services for one year; and for securing the stock book, seal, and record books, etc.; certain provisions, with reference to the drilling of the wells on certain of the lands, and also that the individual holdings of stock should be voted for G. H. Shannon as secretary and general manager of the company

for the term of one year, and that the balance of the stock should be distributed in accordance with the amount set opposite the respective names; but the blanks in the instrument for the number of shares were not filled out, and hence the agreement was silent as to how the stock should be distributed.

In the articles of incorporation, dated September 26, 1902, the several appellants, except Coan, are named as incorporators, and contain a provision that the capital stock should be paid for either in cash or by the sale and transfer to it of real estate or personal property, at such times as the board of directors should, by resolution, direct; and that the capital stock so issued should be fully paid up and nonassessable, and, in the absence of actual fraud in the transaction, the judgment of the directors as to the value of the property purchased shall be conclusive. The articles of incorporation made no provision for treasury stock.

The minutes of the first meeting of the stockholders, dated October 3, 1902, showed the following entry:

> The subscription list, being presented, exhibited, and read, showed the following to be the subscribing stockholders to the capital stock of said corporation, to wit:

| Names | Shares | |
|---|---|---|
| G. H. Shannon subscribed for | 21,250 | Present. |
| E. R. Williams subscribed for | 10,000 | Present. |
| Albert Kime subscribed for | 12,500 | Present. |
| P. L. Stickney subscribed for | 12,500 | Proxy. |
| E. A. Charles subscribed for | 12,500 | Proxy. |
| George E. Rolph subscribed for | 12,500 | Proxy. |
| T. W. Alton subscribed for | 18,750 | Proxy. |
| Total | 100,000 | |

> —Showing one hundred thousand shares of capital stock of said corporation to be subscribed as present and represented.

The minutes further set forth that such part of the articles of incorporation was read as referred to the directors, and that on motion, the stockholders duly proceeded to the election of seven directors, being the several appellants and Alton, after which the meeting adjourned.

The minutes, as introduced, did not contain any reference to an acceptance of the leases, but while Williams was upon the stand he testified that a resolution was adopted at the first meeting of the stockholders to the effect that Shannon, the holder of certain claims, had submitted to the stockholders of the company an offer in writing that he would convey his interest therein to the company in consideration of the issuance to him of one hundred thousand shares of its capital stock, fully paid up and nonassesable, that the stockholders being satisfied that the mining claims were of the reasonable value of $100,000, and that it was for the best interests of the company to possess the same, and, it being deemed a fair and reasonable offer, it was resolved that the same be accepted, and the officers of the company were authorized to issue the stock accordingly.

The minutes then show a meeting of the board of directors of the same date, October 3, 1902, at which were elected the officers of the corporation, the adoption of a seal, the form of stock certificates, and a resolution that fifty thousand shares of the treasury stock be placed on the market at twelve and a half cents per share, and then followed the adoption of by-laws. The record of the minutes of a meeting of the board of directors held October 27, 1902, shows that a commission of not to exceed ten per cent. would be allowed on sales of treasury stock to persons obtaining the same. A verbal report of the field work done to date was made by G. H. Shannon, the general manager. At a meeting of the board held December 2, 1902, fifty thousand shares of treasury stock placed on sale, and remaining unsold, were raised to twenty cents per share, and on motion were placed with some brokers for sale at a commission of twenty five per cent.

From this evidence it fairly appears that the several appellants, except Coan, were in fact original subscribers for the stock of the company at par value, and that an attempt was made to cancel the obligation by turning in the mineral leases through Shannon is evident, but unless such act constituted payment there was no payment. It may be that appellants were acting in good faith, supposing that they were standing on an equal basis with Shannon. They may have assumed that their subscriptions for stock were not original subscriptions, or, if they were, that they had interests in the mineral leases with Shannon,

according to the number of shares distributed to them, and their obligations could be discharged through him.    If such was their intention, they failed to make it appear, and we must accept the eighth finding of fact as final.    The question then arises, did they pay for that stock in any way, either in money or property?    This is the point appellants attempted to have settled when they moved for an amendment to the tenth finding of fact, and asked the court to hold that the stock was paid for by turning in the mineral leases.    That motion was expressly denied, but the court modified the finding and found that Shannon was the owner of the leases, and that prior to the organization of the company he had agreed with appellants that, when the company was organized, he would transfer to it certain mineral leases in consideration of one hundred thousand shares of the capital stock, and that the company accepted the leases and authorized the issuance of the stock to Shannon, and the other appellants, in the amounts mentioned.    It may have been Shannon's purpose to give his associates that amount of stock in consideration of their assistance in promoting the company and acting as directors, and it may be that they supposed the stock was fully paid up, but such an arrangement between the promoters did not discharge the obligation then existing by virtue of their original subscriptions to the company.

The conclusion we have reached in respect to the evidence makes it unnecessary to consider the question suggested and argued at the hearing, as to whether under the pleadings respondent could attack the good faith of the transfer of property by Shannon to the company.

2. Was appellant Stickney released from his obligation as a subscriber for stock by the transfer to Shannon on May 20, 1903?    At that time the company had become insolvent.    Respondent's debt had been incurred, but the action against the company, which resulted in a judgment and this action against the subscribers, had not been commenced.    In this case we are governed, so far as applicable, by the laws of Arizona, and the only statute of that territory bearing upon the subject is as follows:

> Nothing herein shall exempt the stockholders of any corporation from individual liability to the amount of the unpaid instal-

ment on the stock owned by them, or transferred to them, for the purpose of defrauding creditors, and an execution against the corporation to that extent may be levied upon the private property of such individual.

So far as we are informed, this statute has not been construed by the courts of Arizona. It is similar to our own (G. S. 1894, § 2600), which provides that the private property of each stockholder is liable for corporate debts:

First, for all unpaid instalments on stock owned by him or transferred for the purpose of defrauding creditors.

In re People's Live Stock Ins. Co., 56 Minn. 180, 57 N. W. 468, the court construed this section in connection with section 2599, G. S. 1894, and held that a stockholder's liability for unpaid subscriptions does not continue after he has transferred it, except when the transfer was for the purpose of defrauding creditors. The court held, however, that such was the general rule and the statute did not effect any change. The Arizona statute does not make any distinction between an original subscriber and a transferee, unless, as suggested, the word "to" is changed to "by," so as to read, "or transferred by them." Without such change, it means that the owner of stock, no matter how he obtained it, is liable for the unpaid instalments.

Applying the rule adopted by our own court in the case above cited, the liability follows the stock, and Mr. Stickney was released, unless the transfer was made for the purpose of defrauding creditors. The court found that the transfer was made, without consideration, after the debt was contracted, and after the company had become insolvent, but made no finding upon the question of good faith, or fraud. This made out a prima facie case of fraud upon the creditors. "After a corporation has become insolvent, it is the duty of the company to wind up its business, call in the outstanding capital, and satisfy creditors. The shares have ceased to be the subject-matter of legitimate traffic. They are a burden to the owner, and a transfer would be merely a subterfuge to avoid liability." 1 Morawetz, Priv. Corp. § 166; Elliott, Priv. Corp. § 445. Fraud is a question of intent, and may be inferred from the acts of the parties. If the company was insolvent and in debt, the

natural and reasonable inference to be drawn from the fact that the stockholder transferred his stock without consideration is that it was for the purpose of avoiding the liability. If such were not the case, he had it in his power to prove the contrary, and, there being no evidence to that effect, the trial court was justified in finding that appellant Stickney had failed to avoid the obligation.

3. The court found that appellant Coan subscribed for five hundred shares, par value $500, upon the agreement that the stock should be issued to him, fully paid, for the sum of $50, that he paid that sum, and nothing more, and that he was indebted to the company for the remaining $450. Coan claims that this finding is erroneous, because it was competent for the company to sell its capital stock for any sum it chose, and that the sale was valid as between the company and himself, and cannot be set aside by a creditor except under a complaint which charges the bad faith of the transaction and inadequacy of the consideration. We will accept appellant's statement that as between the company and himself the transaction was valid, but think the point made as to the sufficiency of the pleadings is not well taken.

At the time Coan subscribed for his stock the company had no assets whatever, except the prospective value of the mineral leases, and he knew that the company was about to engage in the business of prospecting and drilling for oil and minerals. He knew that none of the capital stock issued to the promoters had been paid for in cash, and that there were no available means for meeting the expenses of conducting the business of the company, except by the sale of its treasury stock. Conceding, then, that if no indebtedness had been incurred the company would not have been in a position to challenge the validity of the sale to him, yet his subscription was made in contemplation of the probability of indebtedness, in which case he would be liable for the par value of the amount issued to him. It therefore seems to us that in this, an equitable action, Coan was not in a position to shield himself under the pleadings by claiming that the complaint did not allege facts sufficient to show that the subscription, as made, was a fraud on creditors. If the complaint had particularly specified that the par value of the stock was $500, that appellant entered into his contract with the company to purchase the same for $50, with knowledge

of the fact that the company had no assets and contemplated engaging in business, and that the purchase was not made for a sufficient consideration or in good faith, appellant could not have been any better prepared with his defense. There is no pretense that he was taken by surprise and was not prepared to meet the issue, and no objection was made to the complaint during the trial. Under such circumstances his claim, that the pleadings do not warrant the findings, cannot be entertained.

4. It was not necessary for respondent to obtain a judgment against the company in the courts of Arizona. While it is the general rule that a creditor should secure a judgment against the corporation and have an execution returned unsatisfied in the court of the forum, that rule does not necessarily apply in a case like this, where the judgment was obtained in a court where the corporation had its principal place of business. In Rule v. Omega Stove & Grate Co., 64 Minn. 326, 67 N. W. 60, it was held that the creditor of an insolvent foreign corporation might, in this state, maintain an action against stockholders without first obtaining judgment in the forum of the corporation, when it was impossible to secure such judgment. In this case the company was organized by promoters residing at Minneapolis, the main place of business, and a court of this state rendered a judgment against the company, the validity of which is not questioned, and it stands as valid. An execution was returned unsatisfied, and it also appears that the company had no assets in the territory of Arizona. Under such circumstances it is evident that the entry of judgment in the courts of Arizona would avail nothing.

Order affirmed.