*In re* PEOPLE'S LIVE STOCK INSURANCE Co., in liquidation.

Argued Dec. 19, 1893.   Modified Jan. 12, 1894.

No. 8397.

**Stockholders double liability how enforced.**

In proceedings under 1878 G. S. ch. 34, §§ 415–420, inclusive, the constitutional or statutory liability of stockholders for debts of the corporation cannot be enforced.

**Stockholders liability for calls on his unpaid subscription, discharged.**

Under chapter 34, §§ 8, 9, a stockholder's liability for unpaid subscriptions to the stock does not continue after he has transferred it, except where the transfer was for the purpose of defrauding creditors.

**Purchaser of the stock liable for unpaid installments.**

The transferee of stock is liable for unpaid subscriptions to the stock transferred to and held by him.

**Practice to enforce stockholders liability for unpaid stock.**

In the proceedings referred to, the court may bring in the stockholders, and enforce their liability for unpaid subscriptions, on the petition or complaint of a creditor of the corporation who has proved his debt.

**Irregularities in the practice held not prejudicial.**

Irregularities in practice or procedure in such a case *held* not prejudicial, and therefore to be disregarded.

Appeal by R. J. Mendenhall and A. C. Paul, stockholders in the People's Live Stock Insurance Company, from an order of the District Court of Hennepin County, *Charles M. Pond*, J., made June 26, 1893, in the proceedings to wind up its affairs, denying their motion for a new trial of the question of their liability.

The People's Live Stock Insurance Company was organized at

Minneapolis June 2, 1890, as a corporation under 1878 G. S. ch. 34, title 2, to insure owners of live stock against loss by death of such stock. Its authorized capital was $100,000 divided into shares of $100 each. Only 300 shares were issued and on these only eight per cent. was paid. Elias Moses subscribed for twenty five shares, and on August 4, 1891, sold to Mendenhall fifteen of them and they were on that day transferred to him on the books of the corporation. F. W. Earle subscribed for one hundred and fifty shares and on December 30, 1890, sold to Paul seventy five of them and they were on that day transferred to him on the books of the corporation. Paul afterwards paid five per cent. more on his stock. On the petition of a majority in number and interest of the stockholders, the corporation was on January 25, 1892, dissolved under 1878 G. S. ch. 34, §§ 415, 417, and Walter J. Marson appointed receiver. Under an order of Court the creditors of the corporation proved their claims against it amounting to $1,855. Among them was James Spilman who held a judgment against it for $591.08. The corporation was insolvent and had no assets. On the application of the creditors, the Court on June 26, 1893, made an order in the proceedings directing the stockholders to pay to the receiver the balance due for their stock. Paul was required to pay $87 on each share of the stock held by him and Mendenhall and the other stockholders $92 on each share of their stock. The Court further ordered that from the proceeds the expenses and fees of the receiver should be paid and $200 to the attorney of the creditors for his services in obtaining the order. The Court also ordered that in case the receiver was unable to collect of the holder of the stock, then the assignor of it should be liable to the extent necessary to pay all debts contracted before his assignment of it and directed that judgment be entered in favor of the receiver, against the stockholders severally for the sums so ordered paid, and reserved all other matters for further consideration. Mendenhall and Paul moved the Court to vacate this order and to grant a rehearing, but were denied and they appeal. A case was made containing the proofs given on the hearing and a copy of it and of all the proceedings was transmitted to this Court.

*Benton, Roberts & Brown,* for appellants.

*Gilfillan, Belden & Willard* and *Benton & Molyneux,* for respondents.

GILFILLAN, C. J. This corporation was incorporated in June, 1890, and transacted business till January, 1892. On the 22d of the latter month, Spilman recovered judgment against it, and on the 25th, on the petition of a majority in number and interest of the stockholders, an order or decree was entered in the District Court of Hennepin county, in which county the corporation had its principal place of business, dissolving the corporation, and appointing a receiver, under 1878 G. S. ch. 34, §§ 415, 417. September 17, 1892, the court made an order fixing the time and manner in which creditors should prove their claims, which order being served as directed, certain creditors, among them Spilman, appeared, and proved their claims, and they were allowed. The court below found as a fact that those who so appeared were all of the creditors of the corporation, and, *prima facie*, at least, this was so.

On the subscriptions to stock, only eight per cent. had been paid, except as to the stock held by Paul, on which thirteen per cent. had been paid. To pay the claims allowed, it was necessary to resort to these unpaid subscriptions. The receiver taking no action to enforce the liability of the stockholders, Spilman, by leave of the court, filed a complaint in the proceeding, in behalf of himself and all others of like interest, against the stockholders, asking, in substance, that their liability on the subscriptions, and also their constitutional or "double" liability, as it is sometimes called, be enforced. The stockholders named as defendants in the complaint were, as directed by the court, brought in to answer the complaint, by service of summons, as required in civil actions. The various parties named as defendants in the complaint, and others who were or had been stockholders, and who were admitted as defendants against the complaint, came in and answered.

After a trial, the court filed its findings of fact and conclusions of law, directing judgment in favor of the receiver, marshaling, so to speak, the liabilities of the stockholders,—first their liability on stock subscriptions, and then their constitutional or double liability,—and directing that the judgment be enforced by execution, so far as necessary to pay the claims proved, in the order in which the liabilities were so marshaled.

Mendenhall and Paul moved for a new trial, and from an order denying it they appeal to this court.

The principal questions raised in the case require a considera-tion of the nature of the proceeding begun by the filing of the stockholders' petition for a dissolution of the corporation. The statutory provisions in regard to the proceedings are contained in 1878 G. S. ch. 34, §§ 415 to 420, inclusive. Section 415 authorizes the dissolution of a corporation on the application of stockholders. Section 416 authorizes the corporation, for three years after disso-lution, to do what may be necessary to gradually close up and set-tle its concerns. Section 417 authorizes the appointment of a re-ceiver to do what the corporation might do under section 416. Of course, the appointment of a receiver necessarily suspends the power of the corporation to proceed under section 416. From the time of such appointment, the affairs and concerns of the corporation, its property and assets, are in *custodia legis*. Section 418 suggests modes of procedure in the most general terms; thus: "Said court shall have jurisdiction in equity of the application, and of all ques-tions arising in the proceedings thereon; and may make such or-ders, injunctions and judgments therein as justice and equity may require." This undoubtedly gives complete control of the proceed-ing, and authority to employ all usual powers and processes of courts in similar cases to accomplish the purposes of the proceed-ing, but not to enlarge such purposes beyond what the statute indicates. Section 419 requires the receiver to pay all debts of the corporation if the funds in his hands are sufficient therefor, and, if not, then to distribute the same ratably among the creditors who prove their debts in the manner directed by the court; and sec-tion 420 provides that, if there be a balance remaining after the payment of debts, the receiver shall distribute it among those justly entitled to it, as having been stockholders, or their legal representatives.

The proceeding is entirely different from that provided by 1878 G. S. ch. 34, §§ 9, 10, and 11, which is an action by a single cred-itor against a live and operating corporation, in which the creditor may join a stockholder as codefendant in order to enforce, for pay-ment of his debt, the liabilities of the stockholder specified in sec-tion 9. *Merchants' Nat. Bank* v. *Bailey Manuf'g Co.*, 34 Minn. 323, (25 N. W. 639.)

It is also different from insolvency proceedings under Laws 1881, ch. 148, the purpose of which is to apply the assets of a debtor, corporate or individual, in satisfaction of the claims of such creditors as may make themselves parties to the proceeding, and share in its benefits, and to release the debtor from the claims of those creditors, leaving the debtor to resume business if he or it can acquire other assets, and leaving the creditors who do not come into the insolvency proceeding to pursue against the debtor such remedies as they may have.

Though in some respects similar to, it differs in important respects from, the proceeding begun pursuant to 1878 G. S. ch. 76, § 9. That is, primarily, a proceeding to sequester the stock and assets of a corporation assumed to be insolvent because an execution against it has been returned unsatisfied, to convert the assets into money, and to pay it ratably in satisfaction of the debts. It can be begun only by a judgment creditor whose execution has been returned unsatisfied, but, when begun, all other creditors, whether their claims are in judgment or not, may become parties to it, and share in its benefits; and (section 15) it may become a proceeding, also, to enforce the liability, for any cause, of the directors and stockholders for the debts of the corporation. It then becomes a proceeding, in effect, to wind up the affairs of the corporation, certainly so far as its then management and ownership is concerned, as well as to enforce the claims of creditors. The stock is to be sequestered for the benefit of the creditors.

The proceeding under 1878 G. S. ch. 34, § 415, and the following sections, is to be begun only by stockholders who desire a dissolution. A dissolution may be adjudged, and the proceeding end with that, and sufficient life be left in the corporation for three years to enable it to close up its business, by disposing of its property and paying its debts; or the proceeding may be revived or continued by the appointment of a receiver at any time, within the three years, to perform, under the direction of the court, the acts which the corporation may, if there be no receiver, perform under section 416. The powers of the receivers are defined in section 417: "To take charge of its estate and effects, and to collect the debts and property due and belonging to it, with power to prosecute and defend actions in

the name of the corporation or otherwise, to appoint agents under them and do all other acts which might be done by such corporation if in being, that are necessary to the final settlement of the unfinished business of the corporation." These powers relate exclusively to the business of the corporation. The power to prosecute and defend actions has reference to such actions as the corporation might have prosecuted or defended but for its affairs being taken out of its hands by the appointment of a receiver. In the proceeding, of course, the debts of the corporation are to be paid so far as the proceeds of its property will suffice, as an incident of settling its business. But it is not, as the proceeding under 1878 G. S. ch. 76, § 9, is, primarily, a proceeding to satisfy the creditors. A creditor cannot, as such, set it in motion. Nor is there anything in the statute suggesting an intention that it may be turned into any other proceeding than one to dissolve the corporation, and to settle up its business, and apply its assets and property in satisfaction of its debts. It would have been well had the statute provided for the creditors enforcing in the proceeding the constitutional and statutory liabilities to them of the stockholders, officers, and directors. It is enough for the purposes of this case that it has not so provided.

Indebtedness of stockholders upon subscriptions to the stock held by them is indebtedness, not to the creditors of the corporation, but to the corporation itself. Such indebtedness is an asset of the corporation. Without a statute authorizing it, a creditor cannot reach it, except through the corporation. The only instances in which the statute authorizes a creditor to directly enforce payment of it for his own benefit are under 1878 G. S. ch. 34, §§ 9, 10, and 11, (a proceeding which the court, in *Merchants' Nat. Bank* v. *Bailey Mfg. Co.,* 34 Minn. 323, 25 N. W. 639, likened to garnishment,) and perhaps under chapter 76, § 21.

But the constitutional or statutory liability is directly to the creditors. The corporation cannot enforce it. It is no part of its assets.

The former, therefore, comes within the scope of the proceeding authorized to be begun under chapter 34, § 415; the latter does not.

It follows that, as the proceeding is not one in which the constitutional or statutory liability may be enforced, the conclusions of

law, so far as they assume to enforce that liability, are erroneous, and therefore we need not consider what a creditor must do to put himself in position to enforce the liability.

The usual way of enforcing unpaid subscriptions, for the purposes of the proceeding begun under section 415, is by action brought by the receiver in his own name, or in the name of the corporation, as the court may direct. We see no reason why the court may not cause the stockholders to be brought in and made parties to the proceeding for that purpose. It would doubtless be more regular, when such course is pursued, to do so on the application of the receiver. But as said by the court in *McKusick* v. *Seymour, Sabin & Co.*, 48 Minn. 158, (50 N. W. 1114,) where, in proceedings under chapter 76, stockholders had been brought in to answer to their liabilities as such on the application of creditors, instead of the receiver: "But it is not important on whose petition, complaint, or whatever you please to call it, the enforcement of the liability is invoked, provided he is a party to the proceeding, and is himself, or as the representative of others, entitled to ask for it." In this case the creditor who filed the complaint was a party to the proceeding, and entitled to ask that the liability of the stockholders, who were in a sense already parties for unpaid subscriptions, be enforced. Even if it be conceded that there was irregularity in authorizing a creditor, instead of the receiver, to prosecute the action, no prejudice from it could result to the stockholders. They were in no way hindered in their defense, and the judgment will protect them against any action for the same cause by the receiver. No prejudice could come to them from the direction that enforcing the judgment by execution shall be under the control, not of the receiver, but of the attorneys for the creditor who filed the complaint. The allowance to those attorneys, there being no complaint as to its amount, could not prejudice the defendants. It is immaterial to them whether those attorneys or the receiver get pay for what was done.

As we have said, the court's decision assumes to marshal the liabilities of the stockholders. Thus, in respect to the liability for unpaid subscriptions, it holds the stockholders, at the time of the dissolution, primarily liable each for the amount unpaid on the stock held by him, and the prior holders of the stock (in some instances there had been several transfers of the same stock, each en-

tered on the books of the corporation) secondarily liable, in the inverse order of the transfers; that is, each liable in the contingency that enough to pay the debts and the costs of the proceeding should not be collected from those held liable before him.

Corporate stock is not commercial paper, and it has none of the privileges and immunities that such paper has. A purchaser takes it subject to any debt due from the stock he purchases to the corporation. The effect of a transfer, when made in good faith, to a solvent person, and entered on the books of the corporation, is like that of a novation. The transferrer is thereby discharged from his debt to the corporation, and the transferee thereby assumes and becomes liable for such debt precisely as the transferrer was. Beach, Priv. Corp. §§ 705, 707.

The statute really makes no change in the rule. The inference of such change that might arise from the language of chapter 34, § 8: "But such transfer shall not in any way exempt the person making such transfer from any liabilities of said corporation which were created prior to such transfer,"—is excluded, or at any rate limited, by section 9: "The private property of each stockholder in any corporation formed as herein provided is liable for corporate debts in the following cases: First. For all unpaid installments on stock owned by him, or transferred for the purpose of defrauding creditors." So that, under the statute, the only case of liability for unpaid subscriptions on transferred stock is where the transfer was made for the purpose of defrauding creditors. There is no claim of anything of the kind in this case.

The conclusion of law that the defendants, or any of them who had transferred their stock before the proceedings were begun, were liable for unpaid subscriptions on the stock so transferred, was erroneous.

Judgment, therefore, can be rendered only against the owners of stock when the proceedings were begun for the unpaid subscriptions on their stock.

The cause will be remanded, for the court below to enter judgment according to this opinion.

(Opinion published 57 N. W. Rep. 463.)