THEODORE R. CONVERSE, RECEIVER, *vs.* THE ÆTNA NATIONAL BANK.

First Judicial District, Hartford, May Term, 1906.
BALDWIN, HAMERSLEY, HALL, PRENTICE and CASE, Js.

The amount for which a stockholder can be assessed to pay the debts of the corporation in the event of its insolvency, depends upon and must be determined by the laws of the State creating the corporation which were in force when he became a stockholder. The mode of enforcing this obligation—which is contractual in its nature—may be varied within reasonable limits by subsequent legislation, but its amount cannot thereafter be materially increased without the stockholder's assent.

In 1899 Minnesota enacted a law which radically changed the statutory procedure for enforcing the double liability of stockholders imposed by its Constitution. In lieu of a single suit by a creditor in a Minnesota court, the Act provided that upon the application of a previously appointed receiver, or of a creditor who had filed his claim in receivership proceedings, the District Court should give a hearing to all parties in interest and assess all stockholders *pro rata*, not only for such an amount as might be necessary to pay the total indebtedness of the corporation and the ordinary expenses of the receivership, as required by the old law, but also for such further sum as the court might estimate would be required for the future expenses of the receiver in instituting and maintaining separate, independent actions against delinquent

Converse, Receiver, v. Ætna National Bank.

stockholders in whatever State or country they might be found ; this assessment to be conclusive upon all stockholders as to all matters relating to the amount of the assessment and the propriety and necessity for making it, regardless of their appearance and of whether they had notice of the hearing or not. In an action upon such an assessment, by a Minnesota receiver against a Connecticut stockholder who was not served with process in Minnesota and did not voluntarily appear in the suit there, it was *held* :—

1. That in respect to stockholders who became such prior to 1899, the Act was unconstitutional, as an attempt to enlarge or increase their obligations under contracts previously made, and which, if effectual, would deprive them of their property without due process of law. (*Two judges dissenting.*)

2. That the obligation incurred by the defendant upon becoming a stockholder was that of a surety, and was due not to the corporation but only to its creditors or to such representative of their interests as the law might create.

3. That inasmuch as the assessment order made by the Minnesota court did not deal with obligations due to the insolvent corporation or with the disposition of its property, the defendant could not be deemed to have been a party to the action in that State upon the theory that it was represented by the insolvent corporation ; and therefore such order was not conclusive upon the defendant as to the amount of its contractual obligation.

4. That the affirmation of the validity of the assessment order by the Supreme Court of Minnesota did not render the order conclusive upon the defendant in the present action, the question at issue not being peculiar to the Constitution and laws of that State, but one depending on the general principles of the law of contract as guarded by the provisions of the Federal Constitution.

5. That the assessment order was not a judgment against any one ; nor were the contractual obligations of the defendant merged in it.

6. That it was immaterial that the assessment laid was for less than the full amount of the defendant's double liability, inasmuch as it did include " a very considerable sum " for the receiver's expenses, for which the defendant was not liable ; and being an entirety and illegal in part, the defendant's demurrer to the complaint upon that ground should have been sustained.

7. That evidence offered by the defendant as to the litigation expenses of the receiver, past and future, was properly excluded as irrelevant, in the absence of any offer to waive the objection that the assessment was an entirety and to submit to a judgment for the defendant's share of whatever had been legally assessed.

A corporation organized under general incorporation laws, whether there be or be not a statutory reservation of a power of amendment or repeal, holds its franchises necessarily subject to the right

of the State to change those general laws, and their application to existing corporations, in any manner not prejudicial to vested interests of the latter or of its creditors or stockholders, not inconsistent with the terms of the implied contract of the latter.

The obligation of the contract between a corporation and its stockholders is not impaired by a law enlarging the remedies of its creditors, whether against the corporation or its shareholders.

The record in the original action by a creditor in Minnesota showed that service was duly made upon the corporation, and that it appeared by its attorney and was heard upon the creditor's motion for the appointment of a receiver. *Held* that the defendant in this action could not impeach that statement by showing that such appearance by attorney was unauthorized.

Argued May 2d—decided July 30th, 1906.

ACTION by a Minnesota receiver to collect an assessment made by a Minnesota court against the defendant and other stockholders of an insolvent corporation of that State, under its laws imposing a double liability, brought to the Superior Court in Hartford County where a demurrer to the complaint was overruled (*Thayer, J.*) and the cause was afterward tried to the court, *Reed, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant. *Error and cause remanded.*

*Charles E. Searles* and *Gardiner Greene*, for the appellant (defendant).

*William Waldo Hyde* and *Charles Welles Gross*, for the appellee (plaintiff).

BALDWIN, J. The Minnesota Thresher Manufacturing Company was organized in 1884, under the laws of Minnesota. Its articles of incorporation specified as the corporate purposes, the purchase, in whole or part, of the capital stock, evidences of indebtedness, and assets of the Northwestern Manufacturing and Car Company, and the manufacture of steam engines and certain other articles. The defendant became a shareholder in the Minnesota Thresher Manufacturing Company prior to 1899. At that time the Constitution of Minnesota declared that "each stockholder in any corporation, [excepting those organized for

the purpose of carrying on any kind of manufacturing or mechanical business,] shall be liable to the amount of stock held or owned by him" (Art. X, § 3); and the statutes of the State provided for the enforcement of this lia- bility by a creditor's bill brought in any of its District Courts which possessed jurisdiction to enforce it, and that in any such action a receiver might be appointed; that in all cases in which the directors, officers, or stockholders of a corporation were made parties to such an action, if its debts remained unsatisfied after applying its assets, includ- ing all sums due and remaining unpaid on the shares of its stock, the court should "proceed to ascertain the re- spective liabilities of the directors or other officers, and of the stockholders, and to adjudge the amount payable by each, and enforce the judgment as in other cases"; and that in any such action the court might order notice to be published to all the creditors of the company, requiring them within a certain time to exhibit their claims and become parties to the action, under pain of being excluded, in default thereof, from all benefit under such judgment as might be rendered. Statutes of Minnesota (1894), §§ 5905, 5906, 5909–5911.

Under this state of the law, it was decided by the Su- preme Court of Minnesota that no suit could be maintained by a receiver, either in or out of Minnesota, to enforce the liability of shareholders (over such amount as might be unpaid upon their shares) for the debts of a corporation; but that the sole remedy was by a single suit by a creditor in the courts of that State.

In 1899 "An act to provide for the better enforce- ment of the liability of stockholders of corporations" was passed. Laws of Minn. p. 315, Chap. 272. This au- thorized any receiver of a corporation within the scope of the constitutional provision, who had been appointed by any District Court either by virtue of the provisions of the statutes which have been previously described or under its general equity powers, to apply to it for an order of assessment against the shareholders. Upon such

application, a time for a hearing was to be set and an order of notice made. At the hearing the court was to consider such testimony as might be offered by him and by any creditors or shareholders, "as to the probable indebtedness of said corporation and the expenses of said . . . receivership, and the probable amount of assets available for the payment of such indebtedness and expenses; and also as to what parties are or may be liable as stockholders of said corporation and the nature and extent of such liability." Then followed these provisions:—

"And if it appear to the satisfaction of the court that the ordinary assets of said corporation, or such amount as may be realized therefrom within a reasonable time, will probably be insufficient to pay and discharge in full and without delay its indebtedness and the expenses of such . . . receivership, and that it is necessary or proper that resort be had to such liability of its stockholders; the said court shall thereupon by order direct and levy a ratable assessment upon all parties liable as stockholders, or upon or on account of any stock or shares of said corporation, for such amount, proportion or percentage of the liability upon or on account of each share of said stock as the court in its discretion may deem proper (taking into account the probable solvency or insolvency of stockholders and the probable expenses of collecting the assessment); and shall direct the payment of the amount so assessed against each share of said stock to the . . . receiver within such time thereafter as said court may specify in said order. Said order shall direct the . . . receiver to proceed to collect the amount so assessed against each share of said stock from the parties liable therefor; and shall direct and authorize said . . . receiver, in case of the failure of any party liable upon or on account of any share or shares of said stock to so pay the amount so assessed against the same within the time specified in said order, to prosecute actions against each and every such party so failing to pay the same, wherever such party may be found, whether in this State or elsewhere. Said order

and the assessment thereby levied shall be conclusive upon
and against all parties liable upon or on account of any
stock or shares of said corporation, whether appearing or
represented at said hearing or having notice thereof or not,
as to all matters relating to the amount of and the pro-
priety of and necessity for the said assessment.    This provi-
sion shall also apply to any subsequent assessment levied
by said court as hereinafter provided.    It shall be the
duty of such . . . receiver to, and he may, immediately
after the expiration of the time specified in said order
for the payment of the amount so assessed by the parties
liable therefor, institute and maintain an action or actions
against any and every party liable upon or on account of
any share or shares of such stock who has failed to pay
the amount so assessed against the same, for the amount
for which said party is so liable.    Said actions may be
maintained against each stockholder, severally, in this
state or in any other state or country where such stock-
holder, or any property subject to attachment, garnishment
or other process in an action against such stockholder, may
be found.    But if said . . . receiver shall in good faith
believe any stockholder so liable to be insolvent, or that
the expense of prosecuting such action against such stock-
holder will be so great that it will be of disadvantage to
the estate and the interest of creditors to prosecute the
same, said . . . receiver shall so report to said court; and
shall not be required to institute or prosecute any such
action unless specifically directed so to do by said court.
And in such case said court shall not require said receiver
to institute or maintain such action unless said court shall
have reasonable cause to believe that the result of such
action will be of advantage to the estate and creditors of
said corporation; except as hereinafter provided."

When the defendant acquired its shares in the Minnesota
Thresher Manufacturing Company, as the latter was not
incorporated solely for manufacturing purposes, its share-
holders were, in favor of its creditors, subject to a double
liability, under the Constitution and laws of Minnesota.

This has been expressly determined by the highest court in that State, and on grounds which seem to us impregnable. *State ex rel. Clapp, Atty.-Gen.*, v. *Minnesota Thresher Mfg. Co.*, 40 Minn. 213, 41 N. W. 1020; *Merchants' Nat. Bank* v. *Minnesota Thresher Mfg. Co.*, 90 Minn. 144, 95 N. W. 767. The company was formed for several purposes, one of which was to buy up the shares of stock and indebtedness of an existing manufacturing corporation. Such a purchase would not be an act directly and naturally incidental to carrying on a manufacturing business. The exception made by the Constitution in favor of manufacturing corporations was not one to be extended by construction.

As it is admitted on the face of the pleadings that the defendant acquired its stock duly and lawfully, no question of *ultra vires* arises. *California Bank* v. *Kennedy*, 167 U. S. 362, 17 Sup. Ct. Rep. 831. It therefore incurred, by becoming a shareholder in a Minnesota corporation, a liability to perform such contractual obligations as were attached by the laws of Minnesota to the ownership of its capital stock. *Fish* v. *Smith*, 73 Conn. 377, 380, 84 Amer. St. Rep. 161, 47 Atl. 711.

One of these obligations was to be answerable for the debts of the corporation, in case of a deficiency of corporate assets, to the extent of the par value of its shares of stock. *Hawthorne* v. *Calef*, 2 Wall. (U. S.) 10, 22; *Ball Electric Light Co.* v. *Child*, 68 Conn. 522, 525, 37 Atl. 391. The amount of this liability could not be thereafter increased by subsequent legislation: the mode of enforcing it could be varied within reasonable limits. A corporation organized under general incorporation laws, whether there be or be not a statutory reservation of a power of amendment or repeal, holds its franchises necessarily subject to the right of the State to change those general laws, and their application to existing corporations, in any manner not prejudicial to vested interests of the latter or of its creditors or stockholders, nor inconsistent with the terms of the implied contract of the latter. To enlarge the remedies of its creditors, whether against the corporation or its

shareholders, impairs the obligation of no contract. *Hill* v. *Merchants' Mut. Ins. Co.*, 134 U. S. 515, 525, 10 Sup. Ct. Rep. 589.

The Supreme Court of Minnesota has held that the Act of 1899, so far as concerns the change of procedure, added nothing to the obligations of those who at the date of its passage were shareholders in a Minnesota corporation. *Straw & Ellsworth Mfg. Co.* v. *Kilbourne B. & S. Co.*, 80 Minn. 125, 137, 83 N. W. 36.

The defendant contends that it added to them in at least two points, to an extent not to be justified as a change of procedure: first, by purporting to join to the liability for the debts of the corporation a liability to assessment by a court of Minnesota for the expenses of any receivership constituted by that court for the benefit of those to whom such debts are due, including such expenses as might be incurred by the receiver in enforcing, whether in or outside of that State, the statutory liability of any and all shareholders; and second, by purporting to make such an order of assessment as that on which the plaintiff sues conclusive as against all shareholders (whether appearing or represented at the hearing of which it was the result, or having notice thereof or not), " as to all matters relating to the amount of and the propriety of and necessity for the said assessment."

Before the Act of 1899, the expenses of a receivership under a creditor's bill were chargeable against any equitable assets of the defendant that could be reached, and the creditor himself might be allowed from the same source a reasonable sum for his own services and disbursements. *Frost* v. *St. Paul B. & I. Co.*, 57 Minn. 325, 59 N. W. 308; *Helm* v. *Smith-Fee Co.*, 79 Minn. 297, 82 N. W. 639. To whatever extent the fund might be thus depleted, the amount of the indebtedness of the judgment debtor, remaining unsatisfied, would necessarily be increased; and there would be just so much more for the shareholders to pay in discharge of their double liability. But we are pointed to no decision of the Minnesota courts to the effect that any

expenses of the receiver of an insolvent corporation that might be incurred in the institution and maintenance of distinct suits to be thereafter brought against individual shareholders could be taken into account under the law and practice existing prior to the Act of 1899, in ascertaining what sums shareholders must pay in discharge of this double liability. See *Harper* v. *Carroll,* 66 Minn. 487, 495, 508, 516, 69 N. W. 610, 1069. The Act of 1899 distinctly authorizes the court in which such a creditor's bill is pending to make an assessment of this nature.

Every shareholder in a corporation has a voice in the control of its affairs. It can contract no debts except under the authority of those chosen by the owners of a majority of its capital stock, or such of them as care to take part in the election. He may therefore be willing to assume a risk of being answerable for such debts within certain limits, when he would not have assumed a responsibility for meeting an indefinite sum for services and expenses never authorized by the corporation, nor enuring directly to its benefit. When the defendant acquired its shares in the Minnesota Thresher Manufacturing Company it promised to pay the debts of the corporation to the extent of the par value of its stock, in default of sufficient corporate assets. It agreed that, in determining whether there were sufficient corporate assets, there might be deducted from such as existed the expense of their collection, including that of any receivership incident to the statutory remedy by creditor's bill. It agreed that the amount to which it might thus become liable might be determined by the Minnesota court having jurisdiction of the receivership proceedings. It did not agree that, in determining it, there might be added to the liabilities, which it had thus assumed, a liability measured by the estimate of the court as to what might be thereafter necessary for future expenses of future suits to collect what were never corporate assets. To the provision of the Act of 1899 authorizing such an addition, it therefore had a right to say, *Non haec in foedera veni.* The clause of the Constitution of Minnesota on which the

plaintiff's claim is based is in derogation of the common law and cannot be extended beyond the words used. *Brunswick Terminal Co.* v. *National Bank*, 192 U. S. 386, 24 Sup. Ct. Rep. 314.

The plaintiff insists that if this be so, the point is made too late and in the wrong court. He sues as a receiver, appointed by the District Court of Washington County in Minnesota, to collect an assessment against shareholders in the Minnesota Thresher Manufacturing Company made by that court on his application, in a suit against the corporation brought by one of its creditors in 1901, to take benefit of the Act of 1899. The application stated that the company was wholly without property of any kind out of which any of its debts could be satisfied; that the receiver had already incurred large expense in conducting the examination necessary to advise the court properly as to how many of the shareholders were solvent; that it was impossible then to determine what would be the total expense of administering his trust and collecting such sums as the shareholders might be liable for, but that it would amount to a very considerable sum. An order of notice to all parties in interest was thereupon made by the court and duly executed. No service of that, or of any process in the cause, was made upon the defendant in the present action within the State of Minnesota. Certain stockholders appeared at the time set for the hearing, and, after they were heard, an assessment of 36 per cent. of the par value of his shares was made against each shareholder. This assessment was based not only on the total indebtedness of the company as proved and allowed, but also on the estimated expenses of the receivership, including such as would be incident to the enforcement by subsequent actions of the shareholders' liabilities for this indebtedness; a very considerable sum being thus added " for the expense of collection and administration."

The contractual obligation impliedly assumed by the defendant to pay the debts of the company, in case of its default, to the extent of a sum equal to the par value of its

shares, was not an obligation due to the corporation. It was that of a surety, and only due to its creditors, or to such representatives of their interests as the law might create. *Allen* v. *Walsh*, 25 Minn. 543; *In re People's L. S. I. Co.*, 56 Minn. 180, 185, 57 N. W. 468 (*Spilman* v. *Mendenhall*); *Minneapolis Baseball Co.* v. *City Bank*, 66 Minn. 441, 444, 69 N. W. 331; *Hale* v. *Allinson*, 188 U. S. 56, 23 Sup. Ct. Rep. 244.

The shareholders in an insolvent corporation may, under some circumstances, be deemed to be in the position of parties to an action in which it is a party and which involves the ascertainment of its obligations or the disposition of its rights of property. A judgment recovered or order made in such a proceeding may be binding upon them, when they can be considered as represented by the corporation in a matter in which it was its right and duty to speak in their behalf, even if its ability to defend their interests has been practically terminated by the appointment of a receiver. *Fish* v. *Smith*, 73 Conn. 377, 389, 47 Atl. 711. The Minnesota Thresher Manufacturing Company was a stranger to any contract raised by the Constitution of the State between its creditors and its shareholders. Whether any right of action had arisen out of that contract was, however, a question turning upon its financial condition. But if it could be held fully to represent any shareholder, though a citizen of another State, during the progress of the inquiry into its possession of assets, when it had been once ascertained both that it had none, and that he had discharged his entire obligation to it, it does not necessarily follow that it had an equal right to represent him for all purposes in any subsequent inquiry designed to fix upon him additional liabilities to other parties, and to liquidate their amount. *Howarth* v. *Angle*, 162 N. Y. 179, 47 L. R. A. 725, 56 N. E. 489. The courts of Minnesota have decided that it represents him fully in such proceedings in the matter of ascertaining the amount of the corporate debts and making the order of assessment for their payment. *Hanson* v. *Davison*, 73 Minn. 454, 462, 76 N. W.

254. Assuming for the purposes of this appeal that such is the law, the conclusiveness of such a finding or order rests ultimately on his consent, to be implied from the relation between corporation and shareholder. *Holland* v. *Duluth I. M. & D. Co.*, 65 Minn. 324, 68 N. W. 50. This consent, springing from the shareholder's original contract, cannot be extended by inference beyond the scope of that contract. Having agreed to answer for the debts of the Minnesota Thresher Manufacturing Company, the defendant may, as a party by representation, be conclusively bound by any order in the receivership proceedings whereby the amount of those debts is ascertained. Not having agreed to be responsible for a receiver's expenses in all suits which he may bring to enforce the liability of any stockholder, it is not, as a party by representation, conclusively bound by an order in those proceedings whereby such future expenses are estimated and made the basis of an assessment against the shareholders.

The order of assessment by the Minnesota court, therefore, cannot be regarded by the courts of this State as having the conclusive effect claimed for it by the plaintiff under the Minnesota statute, when it is made the basis of an action against one of our citizens over whom no jurisdiction was acquired either by service of process within the State of Minnesota, or by a voluntary appearance. If the Act of 1899 can be construed as declaring that shareholders, not citizens of Minnesota, nor otherwise brought under the jurisdiction of its courts, are to be deemed to be parties to such an order, and conclusively bound by it in all respects, it would be much more than a change of remedy, and work so vital an alteration in their relations to the corporation and its creditors as to constitute an enlargement of their implied contractual obligations, which could not be forced upon them without their consent.

For the purposes of this appeal we assume (but do not decide) that the plaintiff is a proper representative of the creditors of the Minnesota Thresher Manufacturing Company; that he can maintain this action, as a statutory suc-

cessor to their contractual rights against the defendant, upon its implied promise to satisfy those rights on the demand of such a successor to them; and that these, under the terms of the defendant's contract, could properly be worked out and defined by an order of assessment made by a Minnesota court, on a creditor's bill, filed after the corporation had become wholly destitute of assets. But if all this be granted, the defendant still remains at liberty to assert in the present action that the assessment is for something which it never agreed to pay. No alteration of the laws of Minnesota affecting its moneyed corporations could substantially enlarge the contractual obligations of those who had previously become shareholders in them. It is to enforce these contractual obligations that the plaintiff sues. *Hale* v. *Allinson*, 188 U. S. 56, 79, 23 Sup. Ct. Rep. 244. They were not merged in the order of assessment. That was not a judgment against any one. The order does not profess to determine whether the defendant or any particular shareholder is liable to respond to the assessment made. A suit to collect it from any shareholder may therefore be met by any defense going to disprove his personal liability to the plaintiff upon his contract as a shareholder. *Great Western Tel. Co.* v. *Purdy*, 162 U. S. 329, 337, 16 Sup. Ct. Rep. 810; *Bank of China* v. *Morse*, 168 N. Y. 458, 61 N. E. 774. If a nonresident, and no party to the receivership proceedings unless as represented by the corporation, the defendant could also show that the order professes to charge him with an obligation to which he was not subject.

The validity of the order on which the present action is based has been affirmed by the Supreme Court of Minnesota, on an appeal by certain shareholders of the Minnesota Thresher Manufacturing Company who had intervened as parties in the receivership proceedings. The plaintiff has set up this adjudication in his complaint. It may be accepted as conclusive as to the true construction of the statute, in so far as concerns the meaning and intent of the legislature. It is not conclusive upon the defendant

in this action, in so far as concerns their power by such a statute to add to its obligations under contracts previously made. That is a question not depending on the Constitution or laws of Minnesota, but on the general principles of the law of contract, guarded by the provision of the Constitution of the United States that no State shall deprive any person of property without due process of law. To increase a contractual obligation by mere legislative fiat would, if effectual, work a corresponding deprivation of property, without due process of law.

It is immaterial that the assessment laid was for much less than the full amount of the defendant's double liability. It was not bound to pay anything on account of that liability except to satisfy corporate debts and the expenses incident to such action as the laws of Minnesota might provide for enforcing the obligations of shareholders to creditors whom the corporation left unpaid, and the costs of any subsequent suit properly brought for similar purposes against itself.

It does not appear how much of the 36 per cent. of the par value of their stock, which the shareholders were ordered to pay to the receiver, represented the amount of the company's indebtedness, and how much represents the expenses of litigation either past or future. The assessment was an entirety. As it included "a very considerable sum" for part or all of which the defendant was not liable, its demurrer to the complaint should have been sustained.

By the answer, filed after the overruling of the demurrer, the plaintiff was put on proof of the Minnesota proceedings, and any liability to him was denied.

The defendant, on the hearing, offered evidence to show the amount of the expense incurred by the receiver prior to the order of assessment, in conducting the examination necessary to advise the court as to how many of the shareholders were solvent; and since that order, in attempting to make collections from shareholders ; and also what would be the total expense of collecting the whole assessment.

This was excluded, and the exclusion is made a reason of appeal.

The questions were apparently intended to bring out facts from which the court might be enabled to ascertain the amount included in the assessment in excess of the corporate debts and the ordinary expenses of the receivership proceedings. No offer to waive the objection that the assessment was an entirety, and to submit to a judgment for the defendant's share of whatever was properly assessed upon the shareholders having been made, the evidence was irrelevant.

The record of the proceedings upon the creditor's bill in the District Court for Washington County in Minnesota showed that service was duly made upon the Minnesota Thresher Manufacturing Company on August 15th, 1901, of process summoning it to appear and make answer to the bill within twenty days after such service; that on August 16th, 1901, the plaintiff moved for the appointment of a receiver, due notice of which motion was served on the defendant and upon S. Blair McBeath its attorney; that the plaintiff and defendant each duly appeared by attorney and were heard on the motion; and that thereupon a receiver was appointed on that day.

Evidence was properly excluded by the Superior Court which was offered to show that the appearance in the receivership proceedings entered for the Minnesota Thresher Manufacturing Company by S. Blair McBeath, as its attorney, was unauthorized by that company. The corporation was a citizen of Minnesota, and the faith and credit due to the record of the District Court forbade any impeachment of the statement therein contained; that it appeared to defend and was duly heard.

Exceptions were filed to the refusal of the Superior Court to alter its finding in certain points as requested by the defendant. The extracts from the record of the receivership proceedings in the District Court on which these exceptions are based, contain nothing inconsistent with the finding of the Superior Court, or leading

to any other conclusions of fact than those to which it came.

There is error, and the cause is remanded to be proceeded with according to law.

In this opinion HALL and PRENTICE, Js., concurred.

HAMERSLEY, J. (dissenting). This action is brought to enforce a duty resting on the defendant, as a member of a Minnesota corporation, by force of the Minnesota Constitution. The substantial defense is based upon the claim that the statute of Minnesota which authorizes the procedure for the enforcement of this duty is void, because it enlarges the prescribed duty and impairs the obligation of a contract within the meaning of § 10, Article I, of the United States Constitution.

The Superior Court sustained the validity of the Minnesota statute. A majority of this court hold that the statute is void, and, if I rightly apprehend the essential basis of the views expressed, upon the following ground : The liability of a stockholder imposed by the Minnesota Constitution depends upon the individual contract made by him by force of the contractual obligations he assumes in becoming a stockholder, and the extent of his liability may be determined by the statutes regulating procedure which happen to be in force at the time of his becoming a stockholder ; the contract made by this defendant in becoming a stockholder included a promise to pay (within the limit of the prescribed amount), in the event of the corporation's insolvency, a sum sufficient to satisfy all claims allowed in the insolvency proceedings, including the expenses of the assignee, receiver, or other officer appointed to wind up its affairs, when that officer is charged with the collection of all the corporation's resources except that of its stockholders' constitutional liability, and did not include a promise to pay such sufficient sum when that officer is charged with the collection of all the corporation's resources for the benefit of creditors, including that of its stockholders' lia-

bility; the Act of 1899, in authorizing the appointment of a receiver charged with the collection of all the corporation's resources, including that of its stockholders' liability, with the necessary consequence of charging the whole fund with the expenses of administration, substantially alters the contract made by the defendant in becoming a stockholder, by adding to his liability as fixed by its terms, and is therefore void.

Neither upon this ground, nor upon any of the main grounds urged by the defendant in argument, does it seem to me that the Act of 1899 alters or impairs the obligation of any contract, whether of stockholder or creditor, or takes any property without due process of law.

At the admission of Minnesota as a State of the Union in 1858, its Constitution in establishing a legislative department authorized the legislature to create corporations, and in Articles IX and X limited this power, defining the meaning of "corporations" and fixing the essentials to the existence of certain corporations. "No corporations shall be formed under special acts, except for municipal purposes." "Each stockholder in any corporation, [except those organized for the purpose of carrying on any kind of manufacturing or mechanical business] shall be liable to the amount of stock held or owned by him." "All corporations shall have the right to sue, and shall be liable to be sued, in all courts in like manner as natural persons." Art. X, §§ 1, 2, 3. As to the corporations indicated, corporate existence and stockholders' liability are inseparable. Without the liability as a corporate resource there can be no corporate existence. The liability of its members or stockholders is as truly a corporate incident as its right to sue or liability to be sued.

It is suggested that the burden thus imposed on each stockholder is of a contractual nature. The duty necessarily follows the voluntary act of becoming a member of the corporation. Such assent has been treated as so far characterizing the obligation as contractual rather than penal in its nature, that although imposed by a State con-

stitution or statute it may be properly enforced in other
States. *Whitman* v. *Oxford National Bank*, 176 U. S. 559,
20 Sup. Ct. Rep. 477. But it does not necessarily follow
that the act of becoming a member is the execution of a
contract to obey the mandate of the Constitution, within
the meaning of "contract" as protected by the United
States Constitution. It was held in the recent case of
*Christopher* v. *Norvell*, 201 U. S. 216, 26 Sup. Ct. Rep.
502, that the double liability imposed upon shareholders in
national banks is imposed *by force of the statute*, and that
a person upon becoming a shareholder, although in a
limited sense there is an element of contract in having be-
come a shareholder, makes strictly no contract with any
one. And so a person capable of owning the stock,
although legally incapable of making a contract, may,
notwithstanding an incapacity to contract, be sued for the
enforcement of the statutory duty upon failure to pay the as-
sessment made by the receiver. The Constitution of Min-
nesota does not direct the legislature to enact laws provid-
ing for a stockholder's liability, but as to the corporations
indicated affirms the liability and fixes its extent; in this
respect it seems to differ essentially from that of certain
other States having somewhat similar provisions. A stat-
ute changing the extent of liability as fixed by the Con-
stitution would be void, and the decisions of the Minne-
sota courts as to its validity on this ground should be held
conclusive, at least as to the decision of the question—
What is the extent of liability imposed by the Constitu-
tion?

The Minnesota Constitution, reading Articles IX and X
in their relation to the whole instrument and in view of
existing territorial legislation, fastens upon corporate ex-
istence the essential incident of shareholder's liability for
all lawful claims against the corporation and corporate
resources, based on corporate contracts or torts incurred
through its officers in the exercise of corporate powers be-
fore it may be adjudged insolvent, or through officers of
the law charged with the collection and administration of

its funds and resources when it has become insolvent. A stockholder's liability is therefore primary and secondary. The primary liability extends to the whole amount invested or agreed to be invested in the capital stock by each stockholder, and as upon the organization of the corporation the funds or obligations necessary to meet the liability are given to the corporation, the shareholder's liability becomes in the first instance a corporate liability enforcible as against the shareholder through the corporation or its successor. The secondary liability, while as essentially and inherently a corporate resource as the first, is in the first instance in the nature of a guaranty fund which, in the event of insolvency, becomes an actual present corporate resource to be applied to the full satisfaction of all claims in accordance with any procedure for that purpose authorized by law. This secondary liability is common to all stockholders as composing the corporation, is inherent to corporate existence, and is only limited as to each stockholder in amount by the amount of stock owned by him.

While no one of the Minnesota decisions deals squarely with the full question of interpretation, and for this and other obvious reasons some seeming inconsistencies may be suggested, yet these decisions do indicate that the Minnesota courts have practically recognized the view above expressed as covering in substance the true meaning of the provisions of the Constitution in respect to the nature and extent of the constitutional liability of stockholders. *Gebhard* v. *Eastman*, 7 Minn. 56 ; *Dodge* v. *Minnesota Plastic Slate Roofing Co.*, 16 Minn. 368; *Allen* v. *Walsh*, 25 Minn. 543, 551; *Arthur* v. *Willius*, 44 Minn. 409, 46 N. W. 851 ; *Willis* v. *Mabon* (*St. Paul Sanitation Co.*), 48 Minn. 140, 154, 157, 50 N. W. 1110 ; *St. Louis Car Co.* v. *Stillwater Street Ry. Co.*, 53 Minn. 129, 132, 54 N. W. 1064 ; *In re People's L. S. I. Co.*, 56 Minn. 180, 57 N. W. 468 (*Spilman* v. *Mendenhall*) ; *First National Bank* v. *Winona Plow Co.*, 58 Minn. 167, 173, 59 N. W. 997 ; *Holland* v. *Duluth I. M. & D. Co.*, 65 Minn. 324, 331, 68

N. W. 50; *Harper* v. *Carroll*, 66 Minn. 487, 508, 69 N. W. 610, 1069; *Hanson* v. *Davison*, 73 Minn. 454, 462, 76 N. W. 254; *Straw & Ellsworth Mfg. Co.* v. *Kilbourne B. & S. Co.*, 80 Minn. 125, 83 N. W. 36; *London & N. W. A. M. Co.* v. *St. Paul P. I. Co.*, 84 Minn. 144, 86 N. W. 872.

A law extending this constitutional liability is void because forbidden by the Minnesota Constitution, and it is practically immaterial, unless as affecting the question of State or Federal jurisdiction, whether it can also be regarded as obnoxious to § 10 of Article I of the United States Constitution. In this case it is wholly immaterial whether the burden resting upon the defendant stockholder is regarded as purely a duty imposed by positive law, or as one arising from some contractual relation; for whether regarded as such duty or contract, its extent is fixed by the Minnesota Constitution. If regarded as a duty independent of contract, it is a duty to answer, in common with all other stockholders, for the liabilities of the corporation, being insolvent, in any proceeding authorized for that purpose by the laws of Minnesota, to the amount of the stock owned by him. If regarded as a contract, it is a contract to make good the liability of the corporation, being insolvent, on any proceeding for that purpose authorized by the laws of Minnesota; to the amount of the stock owned by him.

The Act of 1899 does not extend the liability of the defendant under such duty or contract as defined by the Constitution. It merely authorizes a process adapted to the purpose and known to the law, as incident to the insolvent proceeding in which the liability of each stockholder has become an absolute one, whereby that liability may be enforced to an amount not exceeding the amount of stock owned by him; a process fully adequate in respect to creditors, and beneficial in respect to stockholders, in that it is adapted to protect, *inter se*, the mutual obligations involved in their common subjection as integral parts of the corporation to this corporate burden. Act of 1899, §§ 7–13. The duty, or the contract if it may be so called, imposed and defined by the Constitution binds him to obey

this process.   The Constitution of Minnesota at its adoption—and in this particular it has since remained unchanged—fixed and defined the obligation imposed upon or assumed by every person becoming a stockholder from the date of its adoption to the present time, and that obligation subjects every such person to the process that may be authorized by the State for the purpose of enforcing his liability as therein defined, to the amount of the stock owned by him.

It is suggested that the Act of 1899, although not invalid as impairing the obligation of any contract made by the defendant stockholder, is nevertheless invalid as impairing the obligation of contracts made by others with the corporation in which the defendant is a stockholder.   Assuming that the defendant stockholder may in this action properly challenge the validity of the Act on such ground, the claim of invalidity cannot be maintained.   Any person lawfully contracting with a corporation becomes entitled to the performance of that contract according to its terms; and the obligation of the contract, that is, the law by which the rights acquired and duties imposed are made legal and enforcible, cannot be subsequently changed so as to deprive him of the substantial rights secured to him by the contract. Subsequent legislation cannot alter existing contracts; a State may alter a remedial law at pleasure, but not so as to destroy the obligation of existing contracts.   There is no substantial difference between declaring a contract void, and taking away all remedy to enforce it.   *Green* v. *Biddle,* 8 Wheat. (U. S.) 1; *Bronson* v. *Kinzie,* 1 How. (U. S.) 311; *Seibert* v. *Lewis,* 122 U. S. 284, 289, 7 Sup. Ct. Rep. 1190.   This rule as first established has been illustrated and enforced in a great number of cases.   The test of its application to legislation purporting to be remedial has always been the question—Does the new or changed remedy render it impracticable to enforce some substantial right secured by the terms of the contract?   Whatever difficulty may arise in the reasonable application of the rule in some cases, no such difficulty is presented in this case.   The Act of

1899 affects in no way the obligation of a creditor's contract as against a solvent corporation. The only substantial right which can be said to be secured to him by the contract (as related to this law) is the right, in the event of the corporation's insolvency, to have by some adequate process the property of its stockholders, to an amount not exceeding in the case of any one stockholder the amount of stock owned by him, subjected to the satisfaction of all claims against the corporation. The Act of 1899 provides such a process, which is plainly an adequate and efficacious one. The Act purports by its title to provide, and does in fact "provide for the better enforcement of the liability of stockholders of insolvent corporations." It would be difficult to suggest a remedy on the whole more efficacious, giving to the owners of this class of contracts an adequate enforcement of every substantial right secured to them by the contracts, even if some different remedy, on the whole less efficacious, might in exceptional cases seem more desirable to some particular creditor. It is idle to contend that an Act providing a remedy so full and adequate as that prescribed by the Act of 1899 is not remedial legislation subject to the pleasure of the legislature, but is in substance and effect a denial of remedy to the owners of contracts within its operation, by which the obligations of their contracts are impaired.

A further claim is urged, that the plaintiff's right to maintain this action is authorized only by a judgment of a Minnesota court against the corporation in which the defendant is a stockholder; that the defendant was not personally a party to that action, was not personally served with any writ of summons and did not appear therein, and that therefore the judgment of the court in so far as it authorized this action against the defendant was void.

The action referred to is entitled "The Merchants National Bank of St. Paul, Minnesota, against The Minnesota Thresher Manufacturing Company of Stillwater, Minnesota." The plaintiff is a judgment creditor of the defend-

ant after execution issued and returned unsatisfied, and the action is brought in pursuance of Minnesota statutes respecting actions against corporations, for the purpose of sequestrating the stock, etc., of the defendant corporation, of securing the appointment of a receiver, the distribution of its property, and the winding up of its affairs. Minnesota Statutes (1894), §§ 5897, 5898. In this action judgment was duly rendered adjudging that the stock, property, things in action and effects of the company, be sequestrated and a receiver therefor appointed, and the plaintiff in the present case was duly appointed receiver. Subsequently in said action the claims of creditors were duly presented, proved, and allowed to the amount of over $400,000. Subsequently said receiver presented to the court, according to law, a petition praying that the court might by its order levy an assessment upon the owners of stock for such percentage of the liability on account of each share as the court should deem proper. The court, in pursuance of the statute, ordered that a hearing be had on said petition, and notice thereof was given as prescribed in said order. After said hearing the court duly made its order directing an assessment of 36 per cent. of the par value of each share of capital stock, upon and against each of said shares, and upon and against the party liable as a stockholder on account of said shares, directing the receiver to collect the several amounts due under said assessment, and hold the amounts thus collected subject to the further order of the court, prescribing the time said assessment should be paid to the receiver, and directing the receiver to commence actions against parties liable who failed to pay in the prescribed time. The present action is brought by the plaintiff receiver against the defendant stockholder in said Thresher Company, to recover 36 per cent. of the stock owned by it, and the precise claim made by the present defendant is, that the notice of the hearing upon the petition for an order of assessment was given by publication, or by mailing a copy of the order of notice, and that this defendant was not personally served within the State of Minnesota with summons to appear and

did not appear at said hearing; and therefore as to this defendant said order is void.

It is too well settled to be now questioned, that a corporation such as the Thresher Company, in actions against it concerning corporate matters, represents each of the stockholders of whom it is composed, who are an integral part of the corporation and who are bound by the judgment in such actions in respect to all·corporate matters, whether personally·parties to the action or not. This is especially true in actions instituted for the purpose of winding up insolvent corporations, and in respect to the interlocutory judgments or orders not involving the distinctive and separate rights of a particular stockholder, which may be made as incident to the final settlement of corporate affairs. *Fish* v. *Smith,* 73 Conn. 377, 382, 47 Atl. 711; *Great Western Tel. Co.* v. *Purdy,* 162 U. S. 329, 16 Sup. Ct. Rep. 810; *Hale* v. *Hardon,* 95 Fed. Rep. 747; *Sanyer* v. *Upton,* 91 U. S. 56, 59; *Hawkins* v. *Glenn,* 131 U. S. 319, 329, 9 Sup. Ct. Rep. 739.

The court's order of assessment is an interlocutory order touching the winding up of the corporation, and not affecting the separate and distinctive rights of any particular stockholder. It is specially authorized by the Act of 1899, chapter 272, of the Minnesota Laws. The Act provides that in proceedings for winding up corporations under existing statutes, when the insolvent corporation shall be one whose stockholders are liable by the Constitution of Minnesota, the court before which such proceedings are had shall have power, upon petition of the assignee or receiver, or of any creditor filing a claim in such proceedings, and upon being satisfied that it is necessary or proper that resort should be had to the liability of stockholders, to order an assessment for that purpose against all persons who may be stockholders, for such proportion of the liability on account of each share of stock as the court in its discretion may deem proper. Such an order is one touching the corporation and all its stockholders in common as members of the corporation. It is not a personal judgment against any

particular stockholder, and does not call for the personal service requisite to such judgment. It is conclusive as to the necessity for and amount of an assessment, because the statute vests in the court the power of determining these questions in the manner prescribed ; and is not conclusive in matters personal to a particular stockholder, nor against a person claiming not to be a stockholder. The Act of 1899, in conferring the discretionary power of determining the amount of the assessment, is somewhat analogous to provisions of the National Banking Act, under which that power is given in some cases to the court and in some cases to the comptroller of the currency. It is a power neither purely ministerial nor purely judicial, and its exercise, whether by court or comptroller, is conclusive. *King* v. *Pomeroy*, 121 Fed. Rep. 287, 291, 294; *Concord First Nat. Bank* v. *Hawkins*, 174 U. S. 364, 373, 19 Sup. Ct. Rep. 739; *Bushnell* v. *Leland*, 164 U. S. 684, 17 Sup. Ct. Rep. 209 ; *Kennedy* v. *Gibson*, 8 Wall. (U. S.) 498; *Richmond* v. *Irons*, 121 U. S. 27, 65, 7 Sup. Ct. Rep. 788. The fact that the secondary corporate resource or trust fund, consisting of stockholder's liability as fixed and defined by the Constitution, when that fund is collected by a receiver made a statutory trustee for that purpose, is by force of a well-settled principle of law charged with the expenses of the receivership, including those of collection, and therefore the court or officer vested with the discretionary power of determining the amount of an assessment must take into consideration, among other things, the probable expenses of collection, is a fact which has no legal significance as bearing upon the material questions in this case. *League* v. *Texas*, 184 U. S. 156, 22 Sup. Ct. Rep. 475, and cases above cited, especially *Richmond* v. *Irons*, p. 65, and *King* v. *Pomeroy*, p. 291.

The other errors claimed by the defendant, in so far as they raise substantial questions of law not settled by recent decisions, are controlled by the principles involved in the disposition of the errors discussed.

If the foregoing considerations are sound it follows :—

1. If the contractual relation arising upon the defendant's becoming a stockholder in the Thresher Company can be regarded as a contract within the meaning of § 10 of Article I of the United States Constitution, it is a contract whose terms are defined by the Minnesota Constitution, and includes the promise of subjection to any appropriate process established by the legislature for the enforcement of its stockholders' liability as defined by the Constitution, and the Act of 1899 clearly does not alter the terms nor impair the obligation of such a contract.

2. The obligation of contracts between the Thresher Company and its creditors is only affected by the Act of 1899 through the establishment of an adequate and more efficacious remedy for the enforcement of every substantial right secured to them by their contracts.

3. The order of the Minnesota court directing an assessment against the stockholders of the Thresher Company and determining its amount, was an interlocutory order incident to the winding up of the corporation, not affecting the separate and distinctive rights of any stockholder, and was not a personal judgment against this defendant requiring for its validity the voluntary appearance of the defendant or personal service upon it within the State of Minnesota.

4. The judgment of the trial court cannot be reversed without denying to the plaintiff the protection of § 1, Article 4, of the United States Constitution, which he has invoked in this case.

5. There is no error in the judgment of the Superior Court.

In this opinion CASE, J., concurred.